# HARRISON v. SOUTHERN RY. CO. et al.—215 S. W. (2d) 31.

Eastern Division.   May 13, 1948.

Petition for Certiorari denied by Supreme Court, October 16, 1948.

378

Dannel & Fowler, of Loudon, Clyde W. Key, of Knoxville, and W. E. Michael, of Sweetwater, for plaintiffs in error.

Watkins & Watkins, of Loudon, and Goodwin & Babcock, of Lenoir City, for defendant in error.

HOWARD, J. This is an action for personal injuries in which the plaintiff below, Thomas Riz Harrison, obtained a judgment in the Circuit Court of Loudon County against the defendants, Southern Railway Company and the Loudon Feed, Grain and Coal Company, a co-partner

ship composed of W. J. Butler and wife, Ruth Butler, for the sum of $2,000.00. Defendants seasonably filed motions for a new trial and upon the trial judge suggesting a remittitur of $1,000.00, which plaintiff accepted, the motions were overruled, and the defendants have appealed in error to this Court.

Plaintiff's declaration charges in substance as follows:

That the defendant Southern Railway Company owns certain yards and switch tracks running in and through certain parts of the town of Loudon, one of which goes to the Charles H. Bacon Company, over which for many years with the full knowledge and consent of the railroad the general public has walked and traveled as a path or roadway in going back and forth to their place of employment; that the defendants, Butler and wife, owned a coal yard abutting this switch track; that a long time ago the Butlers dug a pit under the west side of this track extending upon the western end of the ties thereof to facilitate the unloading of coal from railway coal cars; that the location of the pit on the west side of the switch track was well known to the public and in the event there should be a coal car standing on the track where the pit on the west side was located, they went around said car on the eastern side in safety and without danger of falling into said pit; that just a few days prior to October 6, 1946, the Butlers dug a new pit under the eastern side of this switch track to a depth of 6 to 8 feet, in which they placed a conveyor machine, and left said new pit or opening unguarded without guard rail, warning device or protection to prevent persons traveling or walking along said switch track, as they were accustomed to do, from falling into said pit and being injured, thus creating a new danger, hazard and peril to licensees and persons

walking and using said switch track and without giving a timely notice to persons using the same.

Plaintiff, therefore, averred that the defendants were guilty of active negligence in thus creating a new peril and without properly placing guards at or around said new pit and by failing to give proper and timely notice to the public of the dangers created by said new pit; that the plaintiff, in the early morning hours on October 6, 1946, was walking along said switch tracks, while it was yet dark, fell into the newly dug pit, thereby sustaining the injuries for which he sues.

To plaintiff's declaration each of the defendants filed demurrers in which they insisted that the declaration did not allege actionable negligence; that because plaintiff was a licensee the only duty defendants owed him was to refrain from willfully or maliciously injuring him; that said declaration failed to allege any willful or malicious act or conduct upon the part of defendants and that plaintiff's contributory negligence was the proximate cause of his injuries which bars a recovery as a matter of law.

██ ██ Inasmuch as plaintiff's declaration, by a fair and natural construction shows a substantial cause of action, the trial judge correctly overruled defendant's demurrers. Code Section 8729. Jackson v. B. Lowenstein & Bros., Inc., 175 Tenn. 535, 542, 136 S. W. (2d) 495; Wheeler v. Maryville, Tenn. App., 203 S. W. (2d) 924.

Prior to August 6, 1946, the Butlers who retailed coal in the town of Loudon unloaded coal consigned to them from defendant's railway cars on the west side of the spur track, known as the jaybird switch, where they used a small pit that licensees who walked the track knew about, and this pit was known to the plaintiff, who

testified that he had frequestly used the track in walking to and from his work. The Butlers also owned the real estate abutting the spur track on which the pits herein referred to were located.

On the aforesaid date the Butlers with co-defendant's permission dug a new pit on the east side of the track opposite the old pit about six feet deep with concrete sides, and a conveyor was placed therein to carry coal unloaded through the bottom of the coal cars to trucks to be hauled away.

On October 6, 1946, plaintiff was employed as a night watchman at the Charles H. Bacon Hosiery Mill in Loudon, where he had been working for five years. He lived several blocks from the mill and usually went to his work by automobile. On the night he was injured, he couldn't get his car started so he concluded to walk to his work.

Plaintiff's home was north of where the spur track intersects Hackberry Street, and in going to his work he usually drove his automobile south on Hackberry Street to the intersection of Carter Street, then turned left or east on Carter Street. From the point where the spur track crosses Hackberry Street, the track runs in a southeasterly direction to where it intersects Carter Street, thereby forming the hypotenuse of a triangle. On each side of the spur track are several warehouses, some of which face on Hackberry Street and some of which face on a driveway east of the spur track, thus the spur track passes through an alley way between and to the rear of two rows of warehouses where freight is unloaded from the railway cars. The Bacon Mill at which plaintiff worked is located on the spur track between where the track intersects Hackberry Street on the north and where it crosses Cedar Street on the south.

Plaintiff left his home and walked south on Hackberry Street until he reached the spur track at which point he left the lighted street and proceeded to walk between the rails along the spur track until he reached a point where his progress was blocked by a railway coal car which had been placed over the Butler coal pit to be unloaded. To pass this car plaintiff started around the east side and fell into the pit heretofore described, which was uncovered and without guard rail or banister. He said that he walked on the east side of the car because he knew that for several years the Butlers had maintained their coal pit on the west side of the track, which he wished to avoid; that it was so dark he could not see a foot in front of him, and that at the time he was injured he did not know of the existence of the newly dug pit on the east side of the track; that he had used the spur track several days previously and had not noticed that the pit had been changed from the west to the east side of the track. He denied that he had talked to W. J. Butler at the coal pit two weeks prior to the night he was injured.

Jake Thornburg, an employee of the Bacon Mill, testified that he saw plaintiff about 1:20 A. M. after he was injured and that he went to be uncovered pit where he found plaintiff's hat and dinner bucket in the conveyor, and that he called Charlie Bracket, foreman of the mill, who came and took plaintiff to the Hospital. He stated that the public had traveled the switch ever since he was a boy and that he was 50 years of age.

Fred White, age 44, was called as a witness for plaintiff and he stated that he occupied the property on the east side of the track for several years before the Butlers occupied it; that when they took possession of the property he moved to the west side of the track and occupied

the property formerly used by them; that the only cover that he had ever seen was a piece of boiler plate which was placed between the rails over the pit; that up to the time of plaintiff's injuries, no cover was available for that part of the pit extending beyond the end of the ties. He said that the public had used the track as a walkway ever since he could remember and that there were paths on the east and west sides of the track; that when he unloaded sand where the pit is now located he was compelled to stop work while pedestrians passed.

W. N. Oody, another witness for the plaintiff, stated that the public had walked on the jay-bird switch track in going to and from their work since he was employed at the Bacon Mill and the Chair Factory in 1909.

Roy Hodge, Section Foreman of the Railway Company, was called by the plaintiff and testified that he was familiar with the tracks of the defendant company; that he was paid by the railroad company and that the company used and had maintained the jay-bird switch track for several years; that the public had used the track for a long time, but had never walked on the east side where the new pit was located; that on August 7th after the pit was constructed, he inspected it and strengthened the track to make it secure for trains to pass safely over the pit.

Defendant W. J. Butler testified that he and his wife, Ruth Butler, were in the feed, grain and coal business and that they unloaded coal consigned to them on the east side of the jay-bird switch where they constructed the new pit in which they put a conveying machine; that for ten years the public had used the west side of the track where there was a path; but had never used the east side of the track where the new pit was constructed; that he started building the pit August 3, 1946, after getting per-

mission from Mr. I. O. Remine, agent of the Southern Railway, and after it was completed Roy Hodge, Section Foreman, inspected it to see if it was safe sixty days before plaintiff was injured; that when a coal car was not over the pit, a piece of boiler plate was placed in the middle of the track to protect persons from falling into the pit; that platforms had been made for the pit and that it was covered every night before quitting work; that the plaintiff came by where he was working in the new pit about two weeks before he was injured, and talked to him, and that people did not walk on the east side of the track because the ground was rough.

Joe Russell, employee of Butlers, testified that he saw plaintiff several days before he was injured while they were unloading coal at the pit, and that he heard plaintiff talking to others who were present; that the ground was so rough on the east side of the track, the public never went that way but walked exclusively on the west side of the track.

We think the rule may be stated that an owner or occupant who, after having acquiesced for a long period of time in the use by the public of a way across his premises, obstructs the way, excavates therein, or otherwise renders it defective, without providing guards or barriers properly to protect persons using the way or without giving warning of its changed condition, is liable to one who, in using the way without notice of its changed condition, is injured as a consequence of its defective condition. Westborne Coal Co. v. Willoughby, 133 Tenn. 257, 180 S. W. 322; 38 Am. Jur. (Negligence), Sec. 107, p. 770; Douglas v. Bergland, 216 Mich. 380, 185 N. W. 819, 20 A. L. R. 202; 44 Am. Jur. (Railroads) Sec. 425, p. 643.

In Westborne Coal Co. v. Willoughby, supra, our Supreme Court, 133 Tenn. on page 266, 180 S. W. on page 325, said:

"There is no duty to licensees incumbent on a landowner over whose property such persons have been accustomed to go along a path or otherwise to so arrange the property as to safeguard them, even though there should be dangerous holes or pitfalls near the path. Williams v. Nashville, 22 Pick. [533], 106 Tenn. 533, 63 S. W. 231. But if a change should be made in the property by the digging of other pits near the path, or across the path, it would be the duty of the landowner, having knowledge of the habits of the licensees in passing over his land, in some way to warn them. He would have a right to change his land in such way as he might deem proper. The negligence would not consist in the act of such change, but in the failure to warn the licensees of the change of status."

It is insisted on behalf of the Southern Railroad that the injuries incurred by the plaintiff were caused by the intervening active negligence of the defendants, W. J. and Ruth Butler, and that their active negligence in law insulates the Railway Company from liability for the negligence charged against it; that the Butlers, owners of the property, have a right to use the property in any way they desire so long as such use does not interfere with the operation of the railroad.

■■ On this question the evidence discloses that the agents of the railroad (Remine and Hodge) had full knowledge of the construction of the pit on the east side of the track and if the Butlers failed to give proper notice or warning to the public of the change, it was the duty of the railroad to give such notice and do whatever was necessary to protect unwarned licensees who might incur

injuries by falling into the pit. A railroad company has exclusive use and right of control over its right of way and may occupy and use it at any time against all persons, even the owner of the fee. 51 C. J. (R. R.) 239, p. 574. And it is the duty of the railroad company to prevent the abutting property owner from placing dangerous constructions thereon. 44 Am. Jur. (R. R.), Sec. 129, pages 341 and 342; 51 C. J., Sec. 240, p. 574.

Defendants insist that plaintiff was guilty of negligence which proximately caused his injuries by walking on the spur track in the night-time without a light, when he could have safely walked to his work on a well-lighted street. On the other hand it is urged in behalf of plaintiff that he had traveled the spur track many times safely and that he did not know that the pit had been dug on the east side of the track until he fell into it.

■ ■ Whether the plaintiff under the evidence was guilty of negligence which proximately caused or contributed to his injuries by walking on the unlighted spur track in the night-time when he could have safely walked to his work on a well-lighted street was a question under the circumstances for the jury and not an issue to be determined by the Court as a matter of law, it being a question about which reasonable minds might differ. Duling v. Burnett, 22 Tenn. App. 522, 124 S. W. (2d) 294; Patillo v. Gambill, 22 Tenn. App. 485, 124 S. W. (2d) 272; McBroom v. S. E. Greyhound Lines, Tenn. App. 193 S. W. (2d) 92; Gargaro v. Kroger Grocery, etc., Co., 22 Tenn. App. 70, 118 S. W. (2d) 561; Brown v. Chattanooga, 180 Tenn. 284, 174 S. W. (2d) 466; Fields v. Gordon, Tenn. App., 203 S. W. (2d) 934; McGinniss v. Brown, Tenn. App., 204 S. W. (2d) 334; Campbell v. Campbell, Tenn. App., 199 S. W. (2d) 931; Walters v. Staton, 21 Tenn. App. 401, 111 S. W. (2d) 381.

Defendants complain that the verdict was so excessive as to indicate passion, prejudice and caprice on the part of the jury.

At the hearing on the motion for a new trial, the trial judge reduced the amount of plaintiff's judgment to $1,000.00. Plaintiff testified that his medical expenses amounted to approximately $200.00 and that he was in the hospital for two or three days and was thereafter confined to his home for three weeks. He testified that he received a fractured pelvis when he fell on the conveyor and that he suffered much pain from his injuries.

Dr. McPeake saw plaintiff upon his arrival at the Loudon Hospital and administered a sedative to alleviate plaintiff's suffering. He found upon examination a sensation of something dropping in plaintiff's back and stated that he did not know whether it was something coming up or a muscle injury; that he saw the plaintiff five times and recommended that he go to an orthopedic surgeon; and that plaintiff's suffering seemed to be more or less constant.

■ Other doctors, including Dr. Young and Dr. McClure, who fitted plaintiff with a leather brace which he was wearing at the trial, saw plaintiff, but they did not testify. Inasmuch as plaintiff was examined by doctors who represent the railroad, but who were not called to testify, it can be assumed that plaintiff testified correctly about his injuries.

■ Our Appellate Courts have heretofore declared that amounts allowable as compensation for personal injuries are not measured by fixed rules of law, but rests largely in the discretion of the jury, and damages in personal injury cases will not be disturbed on appeal, unless the amounts fixed are so excessive as to indicate passion, prejudice and caprice on the part of the jury.

Nashville v. Brown, 25 Tenn. App. 340, 157 S. W. (2d) 612; Clinton v. Davis, 27 Tenn. App. 29, 177 S. W. (2d) 848; Wolfe et al. v. Vaughn, 177 Tenn. 678, 152 S. W. (2d) 631.

The Butlers have complained about that part of the trial judge's charge in which he instructed the jury that the land owner was required to give reasonable notice of a change in the premises. It is insisted that the judge's charge could reasonably be interpreted to mean that any change on the premises wherein a plaintiff was injured would have to be accompanied by notice to the plaintiff, which notice the jury would have to determine to be reasonable; otherwise, there would be a recovery.

Whether the plaintiff had notice or whether he had adequate time to know about the existence of the pit was a controverted issue which the trial judge properly submitted to the jury under his charge, as follows:

"If the landowner or defendants made a new pit on the way the plaintiff was accustomed to go and they knew the plaintiff went there, it was their duty to give adequate and timely notice of the change. There would be liability if the defendants had knowledge that the plaintiff would likely come along there, and if they dug a new pit across the path or in the path without giving adequate and timely notice to the plaintiff of the changed condition, there would be liability. The liability would not consist of making the change, but the negligence would be in the failure to warn the licensee of the change.

"Now, gentlemen of the jury, what would constitute adequate and timely notice is for you to determine. The defendants insist the pit was dug about the 3rd, 4th or 5th of August, 1946, and the accident was October 6th, 1946, and they insist it was adequate time for the plaintiff to know about it and to have had notice if he had been

passing there or not. The landowner is not bound to put up signs, or banisters, but to give warning in reasonable time, and that is for you to say, and also what would be adequate notice; whether he should put up banisters, signs, or a red flag,—that is for you to say; what would be adequate time or notice is for you to say.

"Defendants say they made a change but the plaintiff came along while while they were doing it and the new pit had been dug on the east side, and that he passed there numerous times afterward.

"I instruct you that if he passed there while it was being done, or immediately after it was there, and walked into it, there would be no liability. If he had notice of it, it would be constructive notice on his part; he takes the land as he finds it. The defendant says it had been there sixty days and that is ample time for him to know it."

We are of the opinion that the above quoted part of the trial judge's charge conforms with the law and the facts of this case, and that the remainder of the trial judge's charge complained about conforms with the law heretofore stated in Westborne Coal Co. v. Willoughby, supra; 38 Am. Jur. (Negligence), Sec. 107, p. 770; Douglas v. Bergland, 216 Mich. 380, 185 N. W. 819, 20 A. L. R. 202; 44 Am. Jur. (Railroads), Sec. 425, p. 643.

Finding no reversible error in the trial below, all assignments of error are overruled and the judgment below will be affirmed at defendants' costs.

McAmis and Goodman, JJ., concur.