# SOUTHERN BELL TELEPHONE & TELEGRAPH CO. v. YATES.—232 S. W. (2d) 796.

Western Section, at Jackson. May 3, 1950.

Petition for Certiorari denied by Supreme Court, August 31, 1950.

Miles & Miles, of Union City, for plaintiff in error.

Heathcock & Elam, of Union City, for defendant in error.

ANDERSON, P. J. This was an action for damages brought by Yates against the Telephone Company. The plaintiff claimed that his stock of merchandise was damaged when his store room was flooded with water due to the negligent act of the defendant's servant in leaving open a water faucet on premises occupied by the defendant and located immediately above the plaintiff's store. At the conclusion of all the evidence, the judge sustained a motion by the plaintiff for a directed verdict in his favor on the issue of liability and submitted to the jury only the question of the amount to which plaintiff was entitled as damages. The jury accordingly brought in a verdict in favor of the plaintiff and fixed the damages at $1,056.76. Judgment for this amount was entered and the defendant appealed in error.

No question is made about the amount of damages as fixed by the jury, but it is ably and vigorously contended that the judge not only erred in directing a verdict for the plaintiff on the issue of liability, but he was in error in not sustaining a motion for a directed verdict made by the defendant at the close of all the evidence. The basic contention is that although the damage to the plaintiff's property may have been caused by an act of negligence

on the part of one in the general employ of the defendant, the servant was, in said particular, acting beyond the scope of her employment and hence, her negligence was not imputable to the defendant.

There is no controversy about the determinative facts. The plaintiff operated a dry goods and clothing store on the first floor of a building owned by a Mrs. Young and located in Obion, Tennessee. The front part of the second floor of the building was occupied under a lease by the defendant Telephone Company, who used it as a location for its local telephone exchange. The rear end of the second floor was occupied by Mrs. Young, her husband and family as their living quarters. There is a toilet and lavatory in that part of the building occupied by the defendant and like facilities, together with a kitchen sink, in that part of the building occupied by the Youngs. All of these fixtures are connected to the same water line.

About 11:00 p. m. on the night of June 9, 1948, Mr. Young discovered that the commode in the part of the building occupied by the Young family, was out of order. To make the repairs, it was necessary to cut off the water and also release the air in the common pipe. Young cut the water off at the ground level by a mechanism which appears to have been in the rear of the building, and having done this, sent his son to request the defendant's night operator, Mrs. Frizell, who was then on duty, to open the faucet on the premises occupied by the defendant in order to release the water and air from the common pipe leading from the defendant's quarters to those occupied by the Youngs.

The operator complied with Young's request and later went back two or three times to ascertain if the water was running. Each time she found that it was not, and on the last occasion she turned the faucet, intending to

close it, but instead opened it further by mistake. She then went to bed. She awakened about 4 o'clock a. m. and found the water pouring from the faucet. It had overflowed the basin and covered the floor of the room. Upon further investigation, the operator found that the water had leaked through the floor into the business house of the plaintiff.

Although not directly shown, it is a fair inference that the overflow of the basin was due to the fact that the drain did not take care of all the water flowing from the faucet when it was opened as far as the operator opened it.

The operator testified that she was unaware that the owner had cut the water off from the outside of the building at the ground level, but Young testified, and it was not disputed, that after the air and water had been released from the pipe as a result of Mrs. Frizell's complying with his request to turn the faucet on, he sent his son to tell her to close the faucet in her quarters. The boy delivered the message and upon its receipt, the operator stated that she would do as requested.

After the common pipe had been cleared of water and air in the manner stated, Young proceeded to make the repair on his commode, finishing the job about midnight. He then turned the water back on at the ground level. In doing this he assumed that the defendant's operator had closed the faucet in her quarters as she had said she would do upon receipt of Young's message to the effect that the pipe had been cleared of air and water.

Young knew nothing about the damage to the contents of the plaintiff's store until the next morning when he met the defendant's operator and was told by her what had happened.

The defendant's argument is that since the opening of the faucet was at Young's request and solely for his

benefit, it was an act beyond the scope of the operator's employment and hence one which fixes no liability upon it. In making this contention, the defendant seems to treat the matter as if the only enterprise to be considered is the operation of the telephone exchange and the operator's employment in that connection. This, we think, is too narrow a view. The question must be determined from the standpoint of the rights and duties of the defendant as an occupant of the premises and its operator, Mrs. Frizell, must be regarded as the agent or servant to whom it had committed for the time being the exclusive custody and control of the property together with the appliances and equipment located therein. In this view, the scope of the operator's employment is to be determined by reference to the general obligation resting on the defendant as the occupier of the property to employ reasonable care in using it and the appliances therein, over which it had exclusive control, so as not to injure the possessors of the neighboring property. Tiffany on Landlord and Tenant, 623, 624. The principle is expressed in the maxim, "Sic uti suc ut non laedat alienum." Broom's Legal Maxims, p. 239.

The defendant has several exchanges or offices in Obion County. All of them are under the general supervision of Mr. Colville, the defendant's manager for Obion County, whose office is in Union City, Tennessee. On the premises here in question and at the particular time, the operator was the only employee or representative of the defendant present. The premises and all of the appliances thereon had been committed to her exclusive custody and control.

One of the three rooms occupied by the defendant under its lease contains the toilet and lavatory. These facilities are maintained for the exclusive use of the em-

ployees of the defendant while on duty. Upon the occasion here in question and prior thereto, the defendant maintained a bed for its night operator to rest or sleep on during the night when she was not busy. There was a night bell to awaken her if a call came in while she was asleep.

As a matter of protection to the night operator, only employees were permitted to enter the premises between the hours of 5:30 p. m. and 8:30 a. m. The door was kept locked and a sign was posted at the entrance to the premises, stating, "Office hours 8:30 a. m. to 5:30 p. m."

In response to a question by the judge, Mr. Colville, the defendant's manager, testified that "the lavatories all over this region are under the supervision of the telephone employees and that no one can get into that room or lavatory, even to get a drink, except they be invited by the telephone company." The witness stated "he might add, that if Mr. Young had asked to come in there to work, she (the operator on duty) probably would have let him in. That is closed for the operator's protection. She is in there by herself. That is to keep drunks, etc. out."

██ ██ The lease under which the defendant occupied the front part of the second floor of the building was not introduced in the record. The only evidence which in any way bears upon the control of the plumbing fixtures is the testimony of Young, (who seems to have acted throughout for the owner of the building, Mrs. Young), to the effect that "they (the defendant) are responsible for their fixtures and everything". In this situation, the defendant as the tenant must be regarded as entitled to the exclusive possession of the entire leased premises against the landlord and all others having no superior title; for a lessor retains no rights over the leased prem-

ises, except such as are reserved in clear and express terms. 51 C. J. S., Landlord & Tenant, Sec. 311, p. 972. He has no right during the term to enter upon the premises even to make necessary repairs unless the tenant consent. Tiffany on Landlord and Tenant, Vol. 1, p. 6, Sec. 3; 32 Am. Jur. 186, Sec. 196; 51 C. J. S., Landlord & Tenant, Sec. 318, p. 992. In these circumstances, since there was no evidence or contention that the plumbing fixtures were defective or of poor quality, the tenant only was responsible for the mode in which they were used and for any overflow caused either by neglect to turn off the water, or by such misuse of the works as deprives them of the power to stop the flow of water. Weinstein v. Barrasso, 139 Tenn. 593, 202 S. W. 920, L. R. A. 1918D, 1174; 52 C. J. S., Landlord & Tenant, Sec. 439, p. 116; 32 Am. Jur. 628. Indeed, it is authoritatively said that a tenant occupying an upper floor is not only liable for damages caused by any negligence in leaving a faucet open, but is liable for similar negligence of his visitors. Shearman and Redfield on Negligence, (Rev. Ed.), Vol. 4, Sec. 803.

It is a fair inference that the opening of the faucet was necessary to enable Young to restore the fixtures in his quarters to usefulness. Having regard to this fact and the fact that a common water pipe served the defendant's quarters and those occupied by the Youngs, in the absence of any provision in the lease requiring a contrary conclusion, there is some plausibility in the view that the defendant could not have rightfully refused to comply with Young's request that the air and water be released from the common pipe, and therefore in opening the faucet in the first instance the operator was merely performing a duty which was upon the defendant.

But it is not necessary to rest a decision on this theory, and in the plight of the evidence we are not disposed to determine its validity. The question presented by the record may be, we think, conclusively answered on other grounds.

The defendant's contention proceeds upon the assumption that the pivotal fact was the opening of the faucet, and the able brief filed on its behalf is built around this theory. This, we think, is a misconception of the gravamen of the cause of action. It was not the opening of the faucet but primarily the failure of the defendant's servant to close it before she retired for the night which caused the water to overflow the basin and escape to the lower floor. The open faucet constituted a risk of harm to the property of the tenant on the lower floor. There can be no doubt that she was aware of this condition and appreciated its significance. This is conclusively shown by the fact that she made several inspections to see if the water was running from the faucet and the fact that on the last of these she intended to close it but opened it wider. The defendant put the operator in charge of the property, making her sole custodian of the premises for the time being, and it was chargeable with the knowledge of the dangerous condition acquired by her while acting in that capacity. With this knowledge it was the duty of the defendant to see that the water did not escape to the lower floor, even though the condition making this possible was due to a fault not attributable to it. Killion v. Power, 51 Pa. 429, 91 Am. Dec. 127; Shearman & Redfield on Negligence, Revised Ed., Vol. 4, Sec. 3; Cf. Weinstein v. Barrasso, supra; and Steele v. May, 135 Ala. 483, 33 So. 30.

Even if it be assumed that in originally opening the faucet the operator was acting beyond the scope of her

employment, which we expressly do not hold, and the linguistic approach to the question be from the standpoint of whether her failure to close the device was within the scope of her employment rather than from the standpoint of the defendant's duty after it had constructive knowledge of the danger, the result, of course, is the same.

■ As stated by the American Law Institute, although a servant has no duty to enter upon a transaction; if he does so and thereby creates a situation such that further action is required to protect others from harm, he has a duty to continue to act and his failure to do so may be conduct within the scope of his employment. Re-Statement of the Law of Agency, Sec. 232, Comment D. The application of this principle is illustrated in the text.

■ In the present case, when the defendant for the time being committed to its operator the sole and exclusive custody of the premises, it necessarily entrusted to her the performance of the duty resting upon it as an occupant in the particulars here under consideration. Whatever may be true with respect to the authority of the operator to open the faucet in the circumstances stated, it cannot be said that her failure to close it after she became aware of the risk of leaving it open was not within the scope of the duties imposed upon her by the defendant. Under the circumstances the latter would have been guilty of a breach of duty even if the faucet had been opened by a stranger. Killion v. Power, supra.

We conclude therefore that in any view of the evidence the fact that the operator opened the faucet only at the request of Young and for his exclusive benefit, if that be assumed to have been the case, was not material in a determinative sense.

In an excellent brief the defendant has cited a number of cases supporting the well-settled general rule that if the servant commit a tort not within the scope of his employment, the master is not liable. We are not unappreciative of the efforts of counsel to aid us in a solution of the determinative question, but it would serve no useful purpose to discuss the cases cited. None of them deal with the duty of a servant to whom has been committed exclusive control of the master's property, to correct a condition on the property known to him, which, unless corrected, would likely cause harm to another in his person or his property. We may add, however, that two of the cited cases, namely, Sherwood v. Warner, 27 App. D. C. 64, 4 L. R. A., N. S., 651, 7 Ann. Cas. 98; and Christiansen v. Mehlhorn, 146 Wash. 340, 262 P. 633, cited in 55 A. L. R. 1270, involve the applicability of the loaned servant doctrine. Upon an inquiry from the Bench during the argument, it was conceded by counsel for the defendant that that doctrine can have no application to the facts of the present case. That the concession was proper will be obvious from an examination of that doctrine as expounded in Gaston v. Sharpe, 179 Tenn. 609, 168 S. W. 2d. 784.

The result is that the judgment is affirmed. Defendant and its sureties will pay the costs.