D. E. WALKER, Administrator of the Estate of Katherine Walker, Deceased,

*v.*

RUSSELL S. WILLIAMS and wife, MAUDE V. WILLIAMS.

384 S.W.2d 447.

(*Knoxville*, September Term, 1964.)

Opinion filed November 12, 1964.

Petition for Rehearing Denied December 11, 1964.

H. H. GEARINGER, Chattanooga, of counsel, MOORE, GEARINGER & SWAFFORD, Chattanooga, for petitioner.

196

Noone, Moseley & Bell, Chattanooga, for respondents.

PER CURIAM.

We granted certiorari, heard argument and carefully considered the very comprehensive briefs and supplemental briefs filed by both parties. No question of fact or law, which was not presented to the Court of Appeals, is presented to us. Our conclusion, after hearing argument and studying the record, is that the Court of Appeals has fully answered all the questions presented and correctly decided the case. What they say makes sense to us. To rewrite the opinion on the same assignments would serve no useful purpose and we, therefore, adopt the opinion of the Court of Appeals as prepared for the court by Judge Robert Cooper, which is:

"This appeal is from the action of the trial judge in directing a verdict for the defendants, Russell S. Williams and wife Maude V. Williams, in a suit for damages for personal injuries sustained by Mrs.

Katherine Walker in a fall on the premises of the defendants.

"Katherine Walker was the mother of the defendant, Maude V. Williams. Mrs. Walker maintained her own home, but often visited in the homes of her several children on week-ends. On the week-end of October 7, 1961, Mrs. Walker accepted the defendants' invitation to visit in their home. While there, Mrs. Walker left the kitchen to enter the garage, and fell.

"In her declaration, Mrs. Walker alleged that on prior visits, she had observed that the regulator on the kitchen screen door was so adjusted that it required the use of considerable force to open the door; that on the date of her accident, she pushed hard against the screen door, unexpectedly met with no resistance, and was thrown off balance and fell to the floor of the garage, which was two steps below the level of the kitchen floor. Mrs. Walker specifically charged that the defendants were negligent in failing to warn her that the regulator on the screen door was broken.

"Prior to trial, Mrs. Walker died from causes other than the injuries received in the fall, and the cause of action was revived in the name of the present plaintiff, D. E. Walker as Administrator of Mrs. Walker's estate.

"As the result of Mrs. Walker's death, plaintiff found it necessary to call the defendants as his witnesses. Both defendants testified that on Mrs. Walker's prior visits to their home, the last of which was some 4 or 5 months before the accident, the kitchen screen door had ordinary spring type hinges which placed as much tension on the door 'as the ordinary door would

have', and which closed the door automatically. Mrs. Williams described the tension on the screen door as 'giving the feeling of support' when you pushed against the door.

"The defendants further testified that the springs on the screen door were broken some three weeks before Mrs. Walker's accident, and had not been repaired; that the absence of the springs permitted the screen door to open under little or no pressure, but that they had not thought to so warn Mrs. Walker.

"Mrs. Williams testified that she saw her mother fall and described the incident as follows:

" 'We had just had our dinner and I was cleaning away the dishes and I had a few things that I wanted to throw out and I went outside into the garage to get a paper to put it in and so I told her I would be back in a few minutes.

" 'So I went out. I wasn't gone but just a minute and I turned around to come back and she was coming out the door and when she—when she started out she put —she had her right hand on the door facing and her left hand on the screen and she, when I turned around she was coming out in that direction and she just came right out and fell flat on her back onto the concrete floor.'

"At the close of plaintiff's proof, the trial court directed a verdict for the defendants on the ground that Mrs. Walker, as a social guest, was merely a 'gratuitous licensee', and that the plaintiff had not alleged nor proven that Mrs. Walker's injuries resulted from any willful or wanton act of negligence on the part of the defendants.

"Plaintiff moved for a new trial contending that the trial court erred in holding that 'Katherine Walker was a gratuitous licensee and not an invitee in the premises of the defendants when she suffered injury, which was the substance of this suit.' When the motion was overruled, plaintiff appealed.

"As pointed out by counsel, there is no reported decision of an appellate court in this State passing upon the status of a social guest. However, the universal rule seems to be that a social guest is a mere licensee. In an exhaustive note in 25 A.L.R.2d 598, 600, the author says:

" 'The terminology of status (that is, the classification into invitees, licensees, and trespassers) used in classifying the liability of an owner, possessor, or occupant of land to one injured while on the land due to defects therein has caused some difficulty in discussing the issue of liability to a social guest in a home who is injured by the defective condition of the property, since, while such a guest is clearly on the property as the result of an "invitation" in the layman's sense of that word, the authorities have universally agreed that he should not be entitled to the same degree of care for his safety as one who is on the property of another as what is sometimes called a "business invitee", that is, for the purpose of conferring some benefit other than purely social.

" 'Despite the express or implied invitation upon which the social guest relies in coming to his host's premises, the courts have concurred in classifying him as a "licensee" of some sort * * *'

"In 38 Am.Jur., Negligence, Sec. 117, p. 778, it is stated that:

" '* * * The rule appears to be that the relation between host and guest is not that of invitor and invitee, but that of licensor and licensee, * * * No exception is made to the rule because of the fact that the guest enters on the host's express invitation to enjoy his hospitality. It is said that the owner or occupant must have a beneficial interest in a visit in order to impose upon him the duty of using reasonable care in having the premises in a safe condition for the visitor, and that the intangible advantages which arise from mere social contacts do not comprise such an interest. A better reason for the rule is that a host merely offers his premises for enjoyment by his guests with the same security that the host and the members of his family who reside with him have.'

"The American Law Institute Restatement of Torts, Section 331, defines a 'gratuitous licensee' as any licensee other than a business visitor and in the comments on Section 331 it is said that the phrase 'gratuitous licensee' includes 'social guests who, in a sense, are persons temporarily adopted into the possessor's family * * *'

"In 65 C.J.S., Negligence, Section 32b, p. 487, it is stated:

" 'A "gratuitous licensee," or as sometimes called a "permissive licensee," is any licensee other than a business visitor, and includes a social guest;'

and in Sec. 32e, p. 489:

" 'It has been held that one who comes on premises by express invitation for purely social purposes to enjoy hospitality as a guest of the owner or occupant or a guest who enters merely to receive a gratuitous

favor from the owner of occupant, has the rights only of a licensee.'

"In addition there are a number of decisions by courts of other jurisdictions reaching the conclusion that where a guest is invited to come upon the premises of the host the relationship created is not that of invitee and invitor in a business sense, but that the guest is a gratuitous licensee. See *Comeau v. Comeau,* 285 Mass. 578, 189 N.E. 588, 92 A.L.R. 1002; *Greenfield v. Miller,* 173 Wis. 184, 180 N.W. 834, 12 A.L.R. 982; *Page v. Murphy,* 194 Minn. 607, 261 N.W. 443; *Sanders v. Brown,* 73 Ariz. 116, 238 P.2d 941; *Goldberg v. Straus,* Fla., 45 So.2d 883; *McNamara v. Hall,* 38 Wash.2d 864, 233 P.2d 852; *Keretian v. Asadourian,* 349 Ill.App. 390, 110 N.E.2d 679; *Maher v. Voss,* Del. [7 Terry 418], 84 A.2d 527.

"Plaintiff urges that the benefits to a host from social intercourse are just as real as monetary benefits derived from business visitors, and that we should not follow the universal rule classing social guests as licensees, but should give them the same status as business visitors. We have given serious consideration to plaintiff's argument, and in doing so have examined a number of cases from other jurisdictions wherein a similar argument was made and rejected. See cases set out above. As a result we are convinced that we should join the great current of authority and hold that a social guest is not in law an invitee but is a licensee to whom the owner owes no duty except to refrain from willfully injuring him or from committing negligence so gross as to amount to willfulness, or from leading him into a trap. *Jack M. Bass & Co. v. Parker,* 208 Tenn. 38, 343 S.W.2d 879; *Birdsong v. City of Chatta-*

*nooga,* 204 Tenn. 264, 319 S.W.2d 233; *Smith v. Burks,* 43 Tenn.App. 32, 305 S.W.2d 748; *Westborne Coal Co. v. Willoughby,* 133 Tenn. 257, 180 S.W. 322.

"In the instant case no claim is made, nor is there any evidence whatever to show that defendants were guilty of any wilful or wanton misconduct nor that the defendants led the plaintiff into a trap. Consequently, we are of the opinion that the trial court's action in directing a verdict for the defendants was correct. Judgment of the court below is affirmed, and costs of this appeal are adjudged against the plaintiff, as administrator."

In addition to the main authorities cited in the opinion of the Court of Appeals a host of others may be found in the annotation 25 A.L.R.2d 598, which is quoted from by Judge Cooper, and then by following the A.L.R. Supplement down to date. We in particular like the reasoning of the Massachusetts court in one of the cases cited by Judge Cooper of *Comeau v. Comeau,* 285 Mass. 578, 189 N.E. 588, 92 A.L.R. 1002, which is to the effect that a social guest for the time being becomes a member of the host family, and must be presumed to accept his or her entertainment with an understanding that he accommodates himself to the condition of his host, the latter being under no duty to make improvements or reconstructions because thereby his home may be more convenient or more safe for those accepting his gratuitous hospitality. And thus the Massachusetts court arrived at the conclusion that where the evidence establishes no more than ordinary negligence on the host's part there is no liability.

Mr. Prosser in his Law of Torts, 2nd Ed., at page 445, sec. 77, makes two or three rather pertinent observations which are applicable to the instant case. He says:

"He receives the use of the premises as a gift, and comes under the old saying that one may not look a gift horse in the mouth. He has no right to demand that the land be made safe for his reception, and he must, in general, assume the risk of the conditions he may encounter, and look out for himself * * *"

And then under the same section at page 447, he says this:

"Thus all of the decisions are agreed that a social guest, however cordially he may have been invited and urged to come, is not in law an invitee, but is nothing more than a licensee, to whom the possessor owes no duty of inspection and affirmative care to make the premises safe for his visit. The reason usually given is that the guest understands when he comes that he is to be placed on the same footing as one of the family, and must take the premises as the occupier himself uses them, without any preparation for his safety; and that he understands that he must assume the risk of defective conditions unknown to the occupier, and is entitled at most to a warning of dangers that are known."

■ ■ It is argued very forcefully by the petitioner that under the facts here a "trap" was created by these conditions and thus it was the duty of the respondents to warn their guests of such condition. Ordinarily the word "trap" as used with reference to liability therefor in tort designates a device or condition created with intent to injure, but, of course, we no longer follow such strict use of the word, and "trap" as now used in this type of law-

suit generally means any kind of a hidden dangerous condition and there need not be any intent to injure.

Under such a factual situation as presented in this case the hosts would be liable for injury to this guest only if the injury was caused by their gross negligence. None is here shown. Under the circumstances of this case it would be unreasonable to expect the host to anticipate that their guest would not exercise ordinary care for his own safety. We all know that in all houses, or homes, today there is certain shrinkage and settling, etc., where doors may become stuck one day and later unstuck, and minor things of this kind in which there certainly would be no obligation for the host to warn their guests that these changes come about. When the factual situation develops, as herein, a small spring on a door that made it close became broken which would cause the door to open more easily, there is certainly no degree of negligence shown on the part of the host which could go to a jury as to whether or not the host had created a "trap".

After thus very carefully considering this case, we must affirm the courts below with costs as adjudged by the Court of Appeals.

### Opinion on Petition to Rehear

Counsel has filed herein a sincere, dignified and forceful petition to rehear. After carefully reading this petition we find that it is merely an additional argument to the argument as made in the supplemental briefs filed prior to our considering the matter on the petition for certiorari, and in oral argument made in this Court on petition for certiorari.

It is true that counsel have attached to this petition certain articles and statements of Professor Prosser

taken from 26 Minnesota Law Review, 573, and of March in The History and Comparative Law of Invitees, Licensees and Trespassers, 69 L.Q. Review Rev., 182 and 359. The principal basis of these articles and of this petition is that we should now change the rules of law as stated in the original opinion and make them applicable to all situations of invitees. We do not think it necessary to do so because if such were done it would certainly be dicta as not applying to the particular facts of the instant case. Under the facts as shown in this lawsuit we think the applicable principles of the law as set forth in the original opinion are applicable herein.

Many years ago Chief Justice John Marshall in *Cohens v. Virginia,* 6 Wheat. 264, 19 U.S. 264, 399, 5 L.Ed. 257, 290, said:

> "It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. * * *"

After a careful consideration of the petition to rehear and the motion filed therewith for a reargument we must deny the petition and deny the request for reargument.