415 F.2d 560
 Don Finis CHANDLER, a minor, by mother and next friend, Vera
Chandler, and Vera Chandler, individually,
Plaintiffs-Appellants,
v.
Martha Gummer MASSA and Joseph M. Massa, individually, and
doing business asOak Lake Club, Defendants-Appellees.
 No. 18405.
 United States Court of Appeals Sixth Circuit.
 Aug. 26, 1969.
 
 Walter Buford and Paul Denton, Memphis, Tenn., for appellants.
 Albert T. McRae, Memphis, Tenn. (Nelson Norvell, Wilson, McRae, Ivy & Farmer, Memphis, Tenn., for Joseph M. Massa d/b/a Oak Lake Club, H. H. McKnight, Memphis, Tenn., for Joseph M. Massa, Individually and Martha Gummer Massa Individually and d/b/a Oak Lake Club, on the brief), for appellees.
 Before WEICK, Chief Judge, O'SULLIVAN and PECK, Circuit Judges.
 WEICK, Chief Judge.
 
 
 1
 Appellants, who are mother and son, have appealed from a judgment entered upon a directed verdict in an action for personal injuries sustained by the son when he, along with his teen-age brother and a cousin, were trespassing on fenced pasture land owned by defendants but leased to Whitehaven Saddle Club.
 
 
 2
 The defendants owned a 34 acre tract of land the easterly half of which was used for picnics, rodeos and dances and was known as the Oak Lake Club. The westerly half had been leased for five years to the Whitehaven Saddle Club for use as a pasture for horses belonging to its members. West of the Saddle Club premises was a field not owned by defendants which fronted on Horn Lake Road.
 
 
 3
 The leased Saddle Club premises were fenced in entirely by a wire fence. The field on Horn Lake Road was also fenced.
 
 
 4
 On the day of the mishap, Edward Lee Webb went to the Chandler residence to visit Don Finis Chandler's older brother, Taylor Otis Artis, and his cousin Joseph Hall. The three boys were teen-agers. The residence was located on Horn Lake Road about two blocks from the field. The three boys left the residence to go to the Oak Lake Club to seek employment in cleaning up the place after a rodeo.
 
 
 5
 The boys took a short cut to get to the club by walking through the field and the Saddle Club pasture. The plaintiff, Don Finis Chandler, age four, 'tagged along' after them. They went through or over the field fence and the two pasture fences to get to the Club property. Arriving safely at the Club, the teen-agers learned that employment was not available and they started to return to the Chandler residence by the same route.
 
 
 6
 They passed again through the barbed wire fence on the Saddle Club property and while walking on a path in the pasture Don, who was barefooted, stepped on some ashes which covered hot embers and was severely burned. The mishap occurred in broad daylight. It is noteworthy that no injury occurred on the way to the Oak Lake Club.
 
 
 7
 The Saddle Club had collected some piles of manure and sawdust in the pasture which caught on fire a few days before the accident. There was conflicting evidence that the defendant, Joseph M. Massa, instructed his employee, Joseph Lee Webb, brother of Edward Lee Webb, to take a tractor and scatter the piles of manure and sawdust so that the fire would die out. There was proof also that the fire department was called. Massa denied that he gave any such instructions or that he called the fire department. On this issue we must accept plaintiffs' evidence as true.
 
 The fire chief testified:
 
 8
 'No, sir, we did not put the sawdust fire out. What I done was put the grass out that was burning around the outer edge, and we took what water we had with us at the time, and we went around the edge of this sawdust area where it was spread down, and soaked it down to where it couldn't catch the grass on fire, because sawdust-- you could have been there for a week hauling water on it and still have smouldering.'
 
 
 9
 Employee Webb testified that he again spread the sawdust and manure and that it continued to smolder although 'it looked like it was out.'
 
 
 10
 A number of theories for recovery were advanced. Plaintiffs contended that the boys were invitees but there was not a scintilla of evidence to support that conclusion particularly as to the four year old plaintiff.
 
 
 11
 Next plaintiffs claimed the right to recover on the thoery of 'attractive nuisance.' But a fenced pasture would hardly fall within that category. There was no proof that Don was lured or enticed to the leased premises by the instrumentality or condition which caused the harm. Pardue v. City of Sweetwater, 54 Tenn.App. 286, 390 S.W.2d 683 (1965). The pasture was not a playground for boys.
 
 
 12
 The District Judge found that plaintiff and his companions were trespassers and, in our opinion, there was no question about it.
 
 
 13
 Plaintiff's brother, Taylor Otis Artis, who was a witness in plaintiff's behalf, testified on cross-examination concerning the fence on the Saddle Club property:
 
 
 14
 'Q But this was a fenced pasture? It has a fence all the way around it?
 
 
 15
 A Yes, sir.'
 
 
 16
 Plaintiff offered in evidence a number of photographs, one of which (Exhibit 6) showed a portion of the Saddle Club fence through which plaintiff and his brothers had to pass. It was a wire fence with strands of barbed wire at the top line of the fence. In identifying the exhibit, Taylor Otis Artis testified on direct examination:
 
 
 17
 'Q What does that show?
 
 
 18
 A This is the second fence where we mashed down and got across.'
 
 
 19
 The photograph (Exhibit 6) bears mute testimony to the fact that Artis and his brother and cousin indeed had to 'mash down' the wire fence so as to make an opening between the wire fence and the barbed wires, through which to pass. The photograph is appended hereto.
 
 
 20
 The fence was obviously adequate to keep the horses confined in the pasture, but was not impenetrable so as to keep out human trespassers who were able to and did bend or 'mash down' the wires. The boys had to pass through or over four fences before the injury occurred. The law imposed no duty on a property owner, much less a landlord out of possession, to erect impenetrable barriers on leased land in order to keep trespassers from entering thereon and injuring themselves.
 
 
 21
 Appellants made the following admission as to Tennessee law in their rebuttal brief:
 
 
 22
 'We acknowledge that the general rule in Tennessee, as elsewhere, restricts the liability of a landowner to licensee or trespasser on his land to circumstances of wanton or wilful injury.'
 
 
 23
 This is a rule of property law. The fact that plaintiff was a minor of tender years does not alter the rule. Ellis v. Orkin, Exterminators Co., 24 Tenn.App. 279, 143 S.W.2d 108 (1940); Garis v. Eberling, 18 Tenn.App. 1, 71 S.W.2d 215 (1934); 65 C.J.S. Negligence 63 (61) at p. 782.
 
 
 24
 In Tennessee, a landlord is liable to his tenant and to invitees of the tenant for injuries resulting from a dangerous condition of the leased premises which existed at the time of the lease, if the landlord knew or in the exercise of ordinary care should have known thereof. The landlord, however, is not liable for a dangerous condition which originates during the tenancy when the landlord is out of possession of the premises. Willcox v. Hines, 100 Tenn. 538, 46 S.W. 297, 41 L.R.A. 278 (1898); Willcox v. Hines, 100 Tenn. 524, 45 S.W. 781 (1898); Stenberg v. Willcox, 96 Tenn. 163, 33 S.W. 917, 34 L.R.A. 615 (1896); Hines v. Willcox, 96 Tenn. 148, 33 S.W. 914, 34 L.R.A. 824 (1896). See also Manes v. Hines & McNair Hotels, Inc., 184 Tenn. 210, 197 S.W.2d 889 (1946).
 
 
 25
 If the landlord had done nothing to estinguish the fire, no liability could possibly have attached to him.
 
 In his opinion, the District Judge stated:
 
 26
 'The proof is without dispute that prior to this accident, the owners of the property had leased it to the Saddle Club. The plaintiff's very theory is that the property had been so leased. There is no evidence here even that there was a pile of sawdust and manure down there at the time of the lease, and presumably there wasn't, because it was the Saddle Club that apparently created the pile after it rented the property.'
 
 
 27
 But it is contended that the landlord sent an employee with a tractor in an effort to put out the fire, which he negligently failed to do; that the landlord later called the fire department, which responded, and which also was negligent in failing to completely extinguish it; and that the ashes covering the burning embers constituted a trap which defendants set for the plaintiff; and, further, that the landlord knew or should have known that adults as well as children were trespassing on the leased land.
 
 The District Judge stated:
 
 28
 'I think the law is that it would still be necessary to show that the injured party in some way relied on the landlord's having attempted to correct the situation. As I said earlier in the colloquy with Mr. Buford during argument, the landlord starts without a duty whatsoever with respect to correcting the situation, and some way you have to raise the duty.
 
 
 29
 'Well, as I understand the annotation, in 150 A.L.R., at page 1379, the duty is raised if the landlord gratuitously undertakes to correct a situation and negligently fails to do so, and in reliance thereon, the plaintiff was injured, and the annotation goes on to say that where the plaintiff doesn't know that the landlord has made any effort to correct the situation, there simply can't be any reliance, and there is no scintilla of evidence that these boys, and particularly Don Chandler, has any knowledge that Mr. Massa made an effort to correct the situation, if, in fact, he did.'
 
 
 30
 Recently we applied the same principle in Cope v. Southern Ry., 410 F.2d 1146 (6th Cir.1969), a Tennessee case, wherein it was contended that the railroad was liable for negligent performance of a duty which it had assumed without legal obligation. We said:
 
 
 31
 'Plaintiff-appellee, who had no knowledge of a flagman's presence until after the accident, did not act in any way in reliance upon the flagman's directions. Where the injured party had no knowledge of nor any reasonable grounds to expect a flagman at the crossing, the legal principles involved are the same as if no flagman were present, and thus no duty was violated.'
 
 
 32
 The dissent relies on dictum in Bass & Co. v. Parker, 208 Tenn. 38, 343 S.W.2d 879 (1961) and Walker v. Williams, 215 Tenn. 195, 384 S.W.2d 447 (1964).
 
 
 33
 In Bass & Co. v. Parker, supra, unlike our case, the plaintiff was found to be an invitee and not a trespasser. In Walker v. Williams, supra, the property owner repaired a screen door in such a manner that it offered less resistance when being pushed open than it previously did, and neglected to warn a guest who was familiar with the previous condition of the door. The guest fell as she pushed open the door. The Court held that as a matter of law this did not constitute a trap.
 
 
 34
 It was the Saddle Club and not Massa who piled the sawdust and manure on the property. Massa did not cause or contribute to cause the fire.
 
 
 35
 Neither do we think that spreading burning embers so that the fire would die out, constituted setting of a trap. It did not constitute negligence for the landlord to call the fire department, if he did make the call. In our opinion, the landlord is not liable for the acts of the fire department in failing to put out the fire.
 
 
 36
 There was no proof that defendants knew that plaintiff or his brother or cousin were trespassing in the leased land. They had never been there before. There was no duty on the part of the landlord to warn trespassers on leased property in the possession of the tenant. There was no duty on the landlord to station guards around the leased property to prevent trespassers from climbing through or over the fences or to warn them of the danger of the smoldering fire. There was no proof that the landlord knew of the existence of a trap, so he was not in position to warn anyone of it.
 
 
 37
 Harrison v. Southern Ry., 31 Tenn.App. 377, 215 S.W.2d 31 (1948), cited in the dissent, involved a path along the side of a railroad track, which the company owning and possessing the property had permitted the public to use. In our case, the path was enclosed by a barbed wire fence which was notice to the public that the path was not a public way. The landlord was not in possession of the Saddle Club property.
 
 
 38
 We hold that the plaintiff, Don Finis Chandler, was a trespasser and that the only duty owed by the tenant, Whitehaven Saddle Club, was not to wilfully or wantonly injure him. The landlord, out of possession of the property, owed no greater duty. Don had no knowledge of any efforts of Mr. Massa to extinguish the fire and hence could not have relied thereon. Massa's failure to completely extinguish the fire cannot therefore form the basis of actionable negligence. There was no proof of wanton or wilful misconduct.
 
 
 39
 The dissent quotes dictum from Pardue v. City of Sweetwater, 54 Tenn.App. 286, 390 S.W.2d 683 (1965), an attractive nuisance case dealing with the liability of the occupier or possessor of land to trespassers. Since defendants were not occupiers or possessors of the leased pasture land, the dictum is inapplicable.
 
 
 40
 Appellants assign error relating to an evidentiary issue which we deem without merit.
 
 
 41
 Affirmed.
 
 
 42
 (APPENDIX OMITTED)O'SULLIVAN, Circuit Judge (dissenting).
 
 
 43
 I respectfully dissent. I do so because of my view that, upon the evidence admitted, a jury could properly find that defendant Joseph M. Massa created, and allowed to remain, a dangerous trap upon premises which he knew were customarily used as a way of ingress to and egress from his own place of business.
 
 
 44
 In finding the appropriate and decisive rule of law for this case, it is not necessary to become enmeshed in the complications of the respective duties of landlord and tenant, inter sese or to the public, in maintaining leased premises in a state of reasonable repair. Neither need the fine distinctions between invitees, licensees and trespassers be discussed. Even if the injured four-year-old Negro youth was, as a matter of law, a trespasser upon the premises leased to the Whitehaven Saddle Club,[1] defendant Massa cannot be exonerated for his conduct in first creating a situation which, to his knowledge, was dangerous to anyone traversing the premises and then in allowing the situation to remain without doing anything effective to eliminate it. I consider that Massa could no more be excused for his creation and continued toleration of a grave danger upon neighboring land which he knew was used as an access to his own premises, than he would be for creating such a dangerous trap upon a public thoroughfare or an established private way.
 
 
 45
 In testing the sufficiency of plaintiffs' evidence to resist defendants' motion for direction, the evidence and all inferences that can be legitimately drawn therefrom are to be viewed in the light most favorable to plaintiffs. Poe v. Atlantic Coast Line R.R. Co., 205 Tenn. 276, 284, 326 S.W.2d 461, 464 (1959). From the evidence received, a jury could come to the factual conclusions which I recite below.
 
 
 46
 Massa knew, or should have known, of the existence of a well-worn path across the Saddle Club premises and that this path was regularly used as a means of access to the Oak Lake Club.[2] My brothers describe the Saddle Club property as 'fenced pasture land.' All of us can remember the many fenced fields across which well-worn paths portrayed how ineffective fences were to boys, and others, who took short cuts to their daily destinations for work or play. Children used this path, and regularly played upon the Oak Lake Club premises, getting there by crossing the Saddle Club property. Observing the burning sawdust and manure, Massa undertook to have it spread over the Saddle Club premises. He knew that his plan of spreading the sawdust to extinguish the fire did not work and was aware that the smoldering continued notwithstanding the fire department's effort to extinguish it. His employee spread the sawdust again after the fire department's effort failed. Massa was aware, or should have been aware, that the sawdust continued as a hazard and was not known to be such by persons using the Saddle Club premises. The jury could find that he created a dangerous trap across a well-traveled path, did not take adequate steps to remove it, and took no steps to warn of the dangerous condition that he had created. As was said in a somewhat analogous case,
 
 
 47
 'The ultimate question is whether defendant can fairly be said to be responsible for the injuries complained of. * * * If reasonable men could differ and draw reasonable inferences from the facts or find one set of facts when two are offered and from those found could conclude that defendant's conduct was negligent, then the jury ought to be permitted to answer the ultimate question.' McGettigan v. Nat'l Bank of Washington, 115 U.S.App.D.C. 384, 320 F.2d 703, 705 (1963).
 
 
 48
 This is not a case of an owner or landlord being sued by a trespasser for his failure to maintain premises in reasonable repair. Nor is it a case, such as the Willcox[3] cases cited by the majority, in which a landlord is sued for failure to remedy a dangerous condition, not created by him, which originated when he was not in possession of the premises. Massa actively and knowingly created a situation which was known by him to have brought about a latent dangerous condition. Although there was no direct evidence on the point, it may be assumed that the burning pile of manure and sawdust was initiated by members or employees of the Saddle Club. It may also be assumed that the then duty of keeping the leasehold premises in repair and not creating danger thereon was that of the tenant and not that of the landlord, Massa. Hester v. Hubbuch, 26 Tenn.App. 246, 170 S.W.2d 922 (1942). Massa, however, as a concerned owner voluntarily undertook what may at first have appeared to him to be a safe way of extinguishing the fire for the protection of both the leased land and the adjoining Oak Lake Club, owned and occupied by him. He directed his employee, Joseph Lee Webb, to spread the burning sawdust and manure. The employee did so and repeated the operation after the fire department failed to put out the fire. I consider that the following quotation from Southern Bell Tel. & Tel. Co. v. Yates, 34 Tenn.App. 98, 232 S.W.2d 796 (1950), is apposite here:
 
 
 49
 'As stated by the American Law Institute, although a servant has no duty to enter upon a transaction, if he does so and thereby creates a situation such that further action is required to protect others from harm, he has a duty to continue to act and his failure to do so may be conduct within the scope of his employment. Re-Statement of the Law of Agency, Sec. 232, Comment D.' 34 Tenn.App. at 107, 232 S.W. at 799.
 
 
 50
 See also Sneed v. Henderson, 211 Tenn. 572, 585-586, 366 S.W.2d 758 (1963). The means employed by Massa to extinguish the fire having failed, he could not then abandon the project and expose the users of the Saddle Club premises to the danger he had created.
 
 
 51
 It is correct that there was no direct proof that Massa knew that plaintiff, his brother or his cousin were traversing the leased land on the day of the accident. The 'mashed down' fence and well-worn path, however, are evidence that Massa knew, or should have known, that some person or persons were regularly traveling across the Saddle Club property. While its facts are not in precise point with the case at bar, the decision in Harrison v. Southern Ry. Co., 31 Tenn.App. 377, 215 S.W.2d 31 (1948), provides satisfactory precedent for the proposition that Massa owed a duty to trespassers to refrain from active negligence. There a coal company's premises adjoined a switch track upon which the railroad delivered carloads of coal to the coal company. To aid in unloading, the coal company had dug a trench that had long been observable to the many persons who walked along the track to get to their work or other destinations. Without previous warning, the coal company, with the railroad's permission, dug a trench on the other side of the track and left it unprotected. The plaintiff, walking along the track in the nighttime, fell into the new trench and sought to recover against both the railroad and coal company for his injuries, alleging active negligence. Neither defendant knew that the particular plaintiff was a user of the path. They insisted in their defenses that plaintiff was a mere licensee and the only duty owed him was to refrain from wilfully or maliciously injuring him. In affirming a verdict and judgment for plaintiff, the Tennessee Court of Appeals said:
 
 
 52
 'We think the rule may be stated that an owner or occupant who, after having acquiesced for a long period of time in the use by the public of a way across his premises, obstructs the way, excavates therein, or otherwise renders it defective, without providing guards or barriers properly to protect persons using the way or without giving warning of its changed condition, is liable to one who, in using the way without notice of its changed condition, is injured as a consequence of its defective condition.' 'If a change should be made in the property by the digging of other pits near the path, or across the path, it would be the duty of the landowner, having knowledge of the habits of the licensees in passing over his land, in some way to warn them. He would have a right to change his land in such way as he might deem proper. The negligence would not consist in the act of such change, but in the failure to warn the licensees of the change of status.' 31 Tenn.App. at 385, 386, 215 S.W.2d at 35.
 
 
 53
 The majority distinguishes Harrison in that plaintiff therein was found to be a licensee while the District Court here found Don Chandler and his companions to be trespassers. Even if the majority is correct that the injured youth was a trespasser, Massa owed a duty to him under Tennessee law. In Bass & Co. v. Parker, 208 Tenn. 38, 343 S.W.2d 879 (1961), the rule limiting liability to a trespasser is given as follows:
 
 
 54
 'It is unnecessary to cite numerous cases for the rule in Tennessee and generally that a duty of ordinary care is owed to an invitee, whereas to licensees or trespassers the only duty of the owner or occupant of premises is not wilfully to injury him or lead him into a trap * * *' 208 Tenn. at 44, 343 S.W.2d at 881.
 
 
 55
 The Supreme Court of Tennessee later defined the word 'trap' in Walker v. Williams, 215 Tenn. 195, 384 S.W.2d 447 (1964), as follows:
 
 
 56
 'Ordinarily the word 'trap' as used with reference to liability therefor in tort designates a device or condition created with intent to injure, but, of course, we no longer follow such strict use of the word, and 'trap' as now used in this kind of lawsuit generally means any kind of a hidden dangerous condition and there need not be any intent to injure.' 215 Tenn. at 203-204, 384 S.W.2d at 451.
 
 
 57
 What was created here-- a large, crusted-over patch of smoldering sawdust and manure, directly upon a well-worn path, of such nature that its continued smoldering was not observable-- could indeed be found by a jury to be a 'hidden dangerous condition.'
 
 
 58
 Relevant also is dictum by the Tennessee Court of Appeals in Pardue v. City of Sweetwater, 54 Tenn.App. 286, 390 S.W.2d 683 (1965):
 
 
 59
 "(A) possessor of land is not under a duty to prevent every possibility of harm but only to exercise due care as to those risks which he should realize are unreasonably great and threaten serious bodily harm in a way unlikely to be appreciated by children whose trespass he should foresee. The ability to appreciate danger varies, of course, with the age of the child, and there can be no recovery if the child is of sufficient age and mental capacity to look out for himself under the circumstances presented. See Prosser on Torts (2d Ed.1955) 441, 443-444; 2 Harper and James, the Law of Torts, 1453-1454.' Garcia v. Soogian, 52 Cal.2d 107, 338 P.2d 433. See also comment (e) to Sec. 339 of the Restatement of Torts.' 54 Tenn.App. at 297, 390 S.W.2d at 688.
 
 
 60
 Although Massa, having leased the Saddle Club property, was no longer its 'possessor' he entered onto the leased premises and created the hidden danger of the smoldering sawdust which may or may not have been known to the lessee. There was evidence, however, that Massa was aware of what he had done.
 
 
 61
 Plaintiff's proofs would be sufficient to reach the jury under the law of several other jurisdictions. See, e.g., Penso v. McCormick, 125 Ind. 116, 25 N.E. 156, 9 L.R.A. 313 (1890); Doren v. Northwestern Baptist Hospital Ass'n., 240 Minn. 181, 60 N.W.2d 361 (1953); Dehn v. S. Brand Coal & Oil Co., 241 Minn. 237, 63 N.W.2d 6 (1954); Annot., 42 A.L.R.2d 930 (1955). Cf. Stanolind Oil & Gas Co. v. Franklin, 193 F.2d 561 (5th Cir. 1951), Anderson v. United States, 138 F.Supp. 332 (N.D.Cal.1956); McGettigan v. Nat'l Bank of Washington, 115 U.S.App.D.C. 384, 320 F.2d 703 (1963); Prosser, Law of Torts, 437-438.
 
 
 62
 I would vacate the judgment of the District Court and remand the case for trial.
 
 
 63
 (APPENDIX OMITTED)
 
 
 
 [1]
 It is my view that there is evidence from which the jury could find that plaintiff Don Chandler was a licensee. Edward Lee Webb, a part-time employee of defendant Massa, invited Don's older brother and cousin to accompany him in seeking employment at the Oak Lake Club. He led the boys across the Saddle Club property to the Oak Lake Club. He knew Don 'tagged alone' behind them, but made no effort to stop him. I do not believe, however, that a resolution of whether Don was a licensee or trespasser is crucial to this appeal
 
 
 [2]
 The existence of the well-worn path is verified by photograph Exhibit 5, which is reproduced at the end of this dissent. The fact that the path was well used and the fences somewhat 'mashed down' be fore the accident was substantiated at trial by the testimony of Rosie Webb, grandmother of Joseph and Edward Webb, who worked at the Oak Lake Club prior to and at the time of appellant's accident. She testified that she crossed over the bent fences and the Saddle Club property each day on her way to and from work. There was other clear testimony of the frequent and observable use of the Saddle Club property as a short cut to Massa's premises
 
 
 [3]
 96 Tenn. 148, 33 S.W. 914 (1896); 96 Tenn. 163, 33 S.W. 917 (1896); 100 Tenn. 524, 45 S.W. 781 (1898); 100 Tenn. 538, 46 S.W. 297 (1898)