**LESLIE FOUR COAL COMPANY, Appellant,**

**v.**

**Robert SIMPSON, Infant, by His Next Friend, Mrs. A. M. Simpson, Mother, Appellee.**

Court of Appeals of Kentucky.

March 18, 1960.

James S. Greene, Jr., Glenn L. Greene, Jr., James Sampson, Harlan, for appellant.

Hiram Brock, Jr., H. M. Brock, Sr., James C. Brock, Harlan, for appellee.

STEWART, Judge.

This is an appeal from a judgment of $5,500 awarded, without the intervention of a jury, to Robert Simpson, a seventeen-year-old infant. The judgment was the outgrowth of a suit in behalf of the latter instituted by his mother, Mrs. A. M. Simpson, as his next friend, against Leslie Four Coal Company for damages, it being averred in the complaint the company's negligence caused the youth to lose his left hand. In this appeal a reversal is urged on the

ground that at the conclusion of all the evidence Leslie Four Coal Company was entitled to a directed verdict.

On October 18, 1956, appellant was operating an auger coal mining enterprise in Harlan County. Appellee, Robert Simpson, was employed at the time as a truck driver for Simpson Brothers Trucking Company, a partnership which was engaged as an independent contractor to haul appellant's coal from the point of production to the coal tipple. This partnership was composed of Joe Simpson, Vernon Simpson and A. M. Simpson. The last-named person is the father of appellee. Robert Simpson, however, was directed in his work by the partners equally.

As is usual in such an operation, a bulldozer had stripped the overburden away from the seam of coal, so that the auger could be directly applied to it. This "facing up" of the coal seam, as it is known in strip mining parlance, had made a cut along the hillside approximately 20 to 25 feet in height. This cut is called the "highwall"; it had been sloped slightly and, in consequence, there was no overhang at the top.

The auger was set up against the coal seam and spiral bits, 42 inches in diameter, were forced into the coal, which pulled the coal out to the face of the seam. A 20-foot conveyor, located under the front of the auger, between it and the coal seam, extended from the auger upward to a point high enough to enable coal trucks to back under the extended end. The mined coal traveled on this conveyor and was dumped into waiting trucks. For night work the auger and conveyor were equipped with lights.

For convenience, two days before the accident, appellant had placed a wooden sled, 10 feet by 15 feet, parallel to the highwall and attached to the auger-propelling equipment. This sled was piled six feet or seven feet high with extra auger bits and it traveled along the coal seam as the auger moved. The joining of the sled onto the auger mechanism required the conveyor, which formerly angled away at 45 degrees from the highwall, to be placed more nearly parallel with the face of the highwall, thus causing trucks that were to be loaded to back in nearly parallel to and close to the highwall.

At about 10:00 p. m. on October 18, 1956, A. M. Simpson, the father of appellee and one of the partners in the trucking company, backed his truck into position for loading. On one side the truck was within four or five feet of the highwall; the conveyor and auger were at the rear of the truck; and the sled loaded with bits was on the other side of the truck. Appellee was waiting with his truck for a load of coal. While his father's truck, ahead of him, was being loaded, appellee, having been ordered to do so, climbed upon the truck bed and leveled the coal as it poured into it "to get a good load."

After he had leveled the load, appellee jumped down to the ground between the truck and the highwall, near the middle of the truck. He called to his father to pull out. About three seconds later, he noticed a handful of dirt falling from the highwall. As the vehicle went forward, appellee ran toward the rear of it, in the direction of the conveyor, and was caught in a large earthslide from the highwall. Appellee was covered by the slide and his left arm was caught against the truck. As an outcome of this mishap, appellee's left hand was severely injured and had to be amputated at a point about three inches above the wrist.

The trial court, in its findings, concluded that the operation of the auger caused the slide; that it was the duty of appellant actually to discover the condition of danger of the highwall as the work progressed; that after such a discovery, a burden was imposed upon it to notify appellee accordingly, who was an invitee on its premises; and that appellant had failed to detect and warn appellee of the hazardous state of the highwall, which later evolved into the slide that injured appellee, and was therefore negligent.

■ The rule is well established that an inviter is not responsible to an invitee for an injury sustained on the inviter's premises from a cause arising from a defect or a danger which the invitee knew of or ought to have known of. Nor in such a situation does the law require the inviter to place the invitee on notice of such a defect or danger. This rule is thus stated in detail in 65 C.J.S. Negligence § 50, p. 543: "The basis of the inviter's liability for injuries sustained by the invitee on the premises rests on the owner's superior knowledge of the danger, and as a general rule he is not liable for an injury to an invitee resulting from a danger which was obvious or should have been observed by the invitee in the exercise of reasonable care, or from a condition which was as well known or as obvious to the invitee as to the inviter, or which the inviter had no reason to believe would not be discovered by the invitee. There is no duty to warn the invitee of any defect or danger which is as well known to the invitee as to the owner or occupant, or which is obvious or which should be observed by the invitee in the exercise of ordinary care. * * *"

Does this rule apply to the facts of this case as stated and as shown hereinafter? We conclude that it does.

Appellant's evidence established that the acknowledged safety measures of freeing or removing from the highwall all overhanging burden and all surface cracks had been observed, thus minimizing the perils besetting an operation such as this. As stated heretofore, the highwall was almost straight with very little slope. Appellee's father testified that in his opinion the highwall was reasonably safe. The same opinion was expressed by Rufus Bailey, the safety director for the Harlan County Coal Operators Association and a former state mine inspector; by William Charles, the safety engineer and mine inspector for Bituminous Casualty Company; by L. E. Gazay, the superintendent for appellant; and by D. L. Strunk, the foreman for appellant. Appellee, in fact, introduced no evidence that controverted this line of testimony.

Nevertheless, the proof in this action disclosed that, in the conduct of auger mining in the manner described, slides from the highwall, generally speaking, will continue to occur. Appellant argues in this connection that slides are a known hazard which inevitably accompany this type of mining and that appellant's duty was not to maintain the highwall so as to prevent any and all slides, but only to exercise ordinary care to construct and maintain it in a reasonably safe condition.

■ The lower court found that the operation of boring the auger into the steep highwall created a "dangerous condition" to one placed in close proximity to the embankment from which the coal was being extracted. As has been pointed out, this situation is brought about by the fact that such a process employed in strip mining coal produces slides of hazardous proportions down the face of the highwall. Under the proof presented we are unable to accept the trial judge's holding that appellant should have ascertained and made known to appellee the perils that would beset him if he placed himself between the truck and the highwall. It is our view the evidence in this case revealed that the dangerous condition which arose here, and to which appellee exposed himself and was hurt, were as well known to appellee as to appellant, or should have been as obvious to him as to it.

Appellee was a regular, not a fill-in, driver. He had been employed at the place of the accident some two weeks before he received his injury. He admitted having knowledge of one previous slide at this same highwall. Appellant brought out in its evidence that it was particularly dangerous for a driver to stand between a truck being loaded and the highwall. All the witnesses who testified on both sides in this case, save and except appellee, considered that one who took up a position sim-

ilar to that appellee was in when he was injured was courting danger. The only testimony appellee gave on this point was that he had never been warned not to get between the truck and the highwall. His father would not positively state when testifying that he had told him not to station himself at the spot where, if a slide happened, he would be in danger.

Vernon Simpson, the brother of A. M. Simpson and one of appellee's employers, testified that he had seen slides before at the location where the accident occurred; that the highwall was in about the same condition at all times; that he had instructed the drivers not to get between the truck and the highwall, as he considered it dangerous; and that they (the drivers) backed their trucks in between the highwall and sled knowing it was a hazardous position. Joe Simpson, another employer of appellee, testified that the highwall was "straight up and down" and that there had been a heavy slide about a week before the one involved in this case, as well as some small ones during this period of time. As a matter of fact, every one involved in the strip mining operation, including appellee, knew there had been slides on the same job site where the one that injured him had occurred.

We believe the record shows conclusively that both appellant and appellee were equally cognizant of all the dangers attendant upon the auger mining operation. Appellee knew all the physical conditions that combine to bring about a slide, because he had knowledge of the previous occurrence of slides at this same place. Having observed slides there it could certainly be inferred he would appreciate the harm that might result to one who placed himself between the truck and the highwall. Appellee was under a duty to make a reasonable use of his own knowledge to avoid dangers upon the premises that might be anticipated at certain locations.

In the instant case, it cannot be said there were hidden defects or dangers neces-

sitating a special warning to appellee of their existence. Under the circumstances appellant had no duty to warn appellee of a danger as well known to appellee as to appellant, or which as here was obvious, or which should have been observed by appellee in the exercise of ordinary care.

Wherefore, the judgment is reversed with directions that it be set aside and the case is remanded with further directions that, if the evidence be the same at another trial, judgment will be entered for appellant.