**OLSHAN DEMOLISHING COMPANY, Inc., Appellant,**

v.

**Frank A. BURLESON, Appellee.**

No. 7128.

Court of Civil Appeals of Texas, Beaumont.

March 26, 1970.

Rehearing Denied April 16, 1970.

Helm, Jones & Pletcher, Houston, for appellee.

KEITH, Justice.

The appeal is from a judgment for personal injuries sustained when the plaintiff, Burleson, was injured upon premises upon which the defendant, Olshan, was engaged in demolition work. The parties will be referred to as they appeared in the trial court.

There is general agreement that the plaintiff was an independent contractor at the time he was hurt and there is no serious disagreement between the parties as to the cause of the accident. The parties are, however, squared off in opposite corners as to the law applicable to the facts. Plaintiff asserts that he was an invitee at the time and place of the occurrence; whereas, defendant contends vigorously that, while plaintiff might have been an invitee on the *jobsite*, he was a mere licensee *at the place* upon the premises where he received his injury. Plaintiff complicates this otherwise simple application of the prevailing law to the facts by asserting that even if he was a licensee, nevertheless, defendant breached the duty owed to him as such and should respond in damages. We discuss, briefly, the underlying facts.

Defendant was a contractor engaged in tearing out the interior of a three-story building in downtown Houston preparatory to the remodeling thereof. It appears that near the front of the building there was an open elevator shaft which defendant had covered with boards and plywood, the extent and condition of the bracing thereof being invisible to a person looking at the surface of the covering.[1]

Plaintiff, the owner of a flat-bed dump truck, was hired by defendant to haul off debris and rubbish accumulated as a result of the work of the defendant. It was plaintiff's duty to back his truck up to a point

Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, for appellant.

1. We have no plat in our record and the testimony with reference to the layout of the building, the location of specific areas thereof, measurements, etc., is most indefinite and unclear in our record.

near the front of the building and the employees of defendant would place the rubbish and debris on the truck. Plaintiff was required to straighten out the material so as to prevent it from spilling off his truck on to the public streets as he hauled it to the dump area.

Ordinarily, when plaintiff approached the building in his truck for it to be loaded, a policeman would direct the traffic on Main Street while he backed it to a point near the front of the building. On the particular occasion in question, however, there was no policeman present to assist him in parking his truck so he left it on the street and walked back to the front of the building. There, and at a spot near the elevator shaft, he found defendant's foreman and was talking with him when a truck loaded with oxygen bottles backed into the area which plaintiff had intended to use.

The driver of the oxygen truck unloaded five bottles from his truck, each bottle being estimated to weigh from 150 to 165 pounds. The oxygen truck driver took the first of the bottles and "rolled" it across the covering of the elevator shaft and left it standing on the opposite side thereof. Plaintiff then attempted to do the same thing with another of the oxygen bottles, but in crossing the shaft, the cover tilted and he was thrown bodily into the shaft, resulting in the injuries for which he sued.

Plaintiff, under the terms of his agreement with defendant, was not required to do anything other than back his truck into the loading area and straighten up the debris to prevent it from spilling out on to the public streets as he hauled it to the dumping area. He could discharge every element of his job on the public streets without even going upon the private premises where the defendant had men working. While waiting for his truck to be loaded, he "would stand around and just wait."

On the other hand, it appears that defendant was insistent upon having the debris hauled off as rapidly as possible. To that end, plaintiff had worked until midnight upon one of the few days of his engagement, and had been requested by defendant to procure a relief driver so as to be able to have his truck available around the clock. It was plaintiff's theory of the case that he had approached the place of his injury to ask assistance from the foreman in directing traffic so that he could resume his work for the defendant. According to plaintiff, he was in the area where he was injured as an invitee. The foreman did not testify.

It is clear that no one asked plaintiff to assist the oxygen truck driver in moving the bottles. We now reproduce his testimony on *direct* examination:

"Q. Now then, Mr. Burleson, when this man, the oxygen man, rolled that bottle across, what, if anything, did you do, sir?

"A. Well, he rolled his bottle across, and when he was doing that, I was standing along in here,[2] so I thought, 'Well, I'll just help him'.

"So I taken the second bottle and rolled it and—"

His testimony was even stronger upon cross examination.

The jury found defendant guilty of negligence proximately causing plaintiff's injuries in failing to properly brace the wood covering of the shaft, acquitted plaintiff of contributory negligence, found that he was an invitee and not a licensee,[3] and

2. Apparently, plaintiff was pointing to the rough sketch or plat which he had drawn upon the blackboard in the courtroom. We have no possible means of determining where plaintiff was located when he describes the location as "here".

3. An *invitee* was defined as "a person who has been invited, either expressly or impliedly, to come onto that portion of the premises for the benefit of those who gave him such implied or express invitation, or for some purpose, or interest, or ad-

assessed his damages. Having no points challenging the negligence or damage issues, we forego further discussion thereof.

We are not required to nor do we pass upon the propriety or the form of the submission of the issues of "invitee" as distinguished from "licensee" as was done in this instance.[4] Neither party proceeds upon the theory that we are required to review the evidence in accordance with the usual rules relating to findings of the jury on disputed questions of fact. See: Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.Law Rev. 361 (1960). Instead, the parties analyze the evidence and attempt to apply the correct rule of law thereto and we will treat the appeal in the same manner as it reaches us in the briefs.

The parties are in agreement that a person may be an invitee as to one portion of the premises but a licensee as to another portion thereof. Burton Construction & Shipbuilding Co. v. Broussard, 154 Tex. 50, 273 S.W.2d 598, 602 (1954); Carlisle v. J. Weingarten, Inc., 137 Tex. 220, 152 S.W. 2d 1073 (1941); Cowart v. Meeks, 131 Tex. 36, 111 S.W.2d 1105 (1938). See also, Hernandez v. Heldenfels, 374 S.W.2d 196 (Tex.Sup., 1963).

■ Plaintiff argues that his voluntary act of helping roll the oxygen bottle across the shaft was for the mutual benefit of the parties to this suit. His argument proceeds along this line: In so doing, he would speed up the departure of the oxygen truck and thereby be able to pull his truck off the crowded Main Street sooner and get on with his business of removing the rubbish from defendant's premises. This position is taken in order to avoid the impact of Cowart v. Meeks, supra, which bears some similarity on the facts to our case. There the court said:

"It is apparent, it seems to us, that when the Cowarts climbed the fire escape to the top of the first story of the building they were doing so for their own convenience and satisfaction, and there was not such mutuality of advantage and common interest between what they were doing and the business of Meeks as to make them invitees." (111 S.W.2d at p. 1107)

The act of the plaintiff in assisting in the placement of the oxygen bottle was not done for his own convenience; and, as plaintiff asserts, the sooner the oxygen truck departed, the earlier he could resume his work for the defendant. We bear in mind, too, that the plaintiff was being paid upon an hourly basis and to the extent that he was working rather than waiting, it was for the benefit of the defendant. Under the circumstances, therefore, Cowart v. Meeks is not controlling.

■ Defendant also contends that plaintiff may not recover because he was a "mere volunteer" while engaged in assisting the driver of the oxygen truck. Reliance is placed upon Bonner v. Bryant, 79 Tex. 540, 15 S.W. 491 (1891) and Mayton v. Texas & P. R. R. Co., 63 Tex. 77 (1885). We have no quarrel with the authorities cited; but, in our opinion, they are inadequate to the task assigned. Insofar as the driver of the oxygen truck may have been concerned, plaintiff may well have been a volunteer. But, as to the defendant, the jury found, under appropriate instructions, that he was an invitee at the time and place where he was injured. More

---

vantage, to those who gave him such invitation."

A *licensee* was defined as being "a person who has permission, express or implied, to come onto that portion of the premises for his own purposes; but his purpose for being on such portion of the premises is not for the benefit of those who gave him permission."

4. Cf. Olivier v. Snowden, 426 S.W.2d 545, 549 (Tex.Sup., 1968), quoting from Arthur v. Standard Engineering Co., 89 U.S. App.D.C. 399, 193 F.2d 903, 32 A.L.R. 2d 408 (1951). See also: Richmond v. Triangle Motors of Dallas, 254 S.W.2d 172, 177; aff. 152 Tex. 354, 258 S.W. 2d 60 (1953).

important, however, is the fact that the defendant has made no effort to refute the proof of negligence in the maintenance of the defectively covered elevator shaft nor has it in any manner offered any explanation as to why plaintiff fell through the covering into the hole while the oxygen truck driver made the same maneuver in safety.

The cover over the shaft which had been placed there by the defendant concealed a condition which was not readily apparent to a person lawfully on the premises. It was a hidden and concealed danger created by the defendant,[5] and defendant's negligence in the maintenance thereof stands unchallenged in our record. The jury refused to find that plaintiff failed to keep a proper lookout and he was acquitted of any contributory negligence, and these findings of the jury are not challenged.

▌ The rule with reference to hidden dangers is aptly set out by the authors in Restatement of the Law of Torts, 2d Ed. § 343, p. 215, in this language:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

"(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

"(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

"(c) fails to exercise reasonable care to protect them against the danger."[6]

In Harvey v. Seale, 362 S.W.2d 310, 312 (Tex.Sup., 1962), Justice Walker, in discussing the landowner's duty toward an invitee, said:

"All the latter [the visitor] can expect is knowledge of actual conditions that will be encountered so he may determine whether to avail himself of the landowner's consent. The duty of a landowner to his licensee or invitee is fully discharged then by a complete disclosure of the danger. And there is no duty whatsoever with respect to conditions that are so open and obvious, with the dangers therein so apparent, that the same are or should be known to and appreciated by the visitor. One who has no right to enter except by virtue of the landowner's consent can remain off the premises if he does not wish to subject himself to the risk of injury from such conditions. Where he has an opportunity to exercise an intelligent choice as to whether the advantage to be gained by his entry is sufficient to justify his incurring the risk, the landowner owes him no further duty of protection from harm. See Restatement of the Law of Torts §§ 340 to 343, inclusive, and comments thereunder. * * * [Remaining citation omitted.]"

In Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368, 378 (Tex.Sup., 1963), the court again considered the matter, saying:

"If there are dangers which are not open and obvious, he [the landowner or person in control] is under a *duty* to take such precautions as a reasonably prudent person would take to protect his invitees therefrom or to warn them thereof." (Emphasis by the Supreme Court.)

▌ The condition of the premises was such that the hidden and concealed danger attendant upon a use of the covered shaft was in the nature of a trap. Of course, there was no intent to injure the plaintiff

5. Smith v. Henger, 148 Tex. 456, 226 S.W. 2d 425, 433 (1950).

6. See also, J. Weingarten, Inc. v. Razey, 426 S.W.2d 538, 539 (Tex.Sup., 1968), wherein the court commented upon the fact that § 343 of the Restatement (first edition) has been cited with approval "at least three times."

or any other person through its maintenance, but such is no longer necessary. It was said by the Supreme Court of Tennessee in Walker v. Williams, 215 Tenn. 195, 384 S.W.2d 447, 451 (1964):

> "Ordinarily the word 'trap' as used with reference to liability therefor in tort designates a device or condition created with intent to injure, but, of course, we no longer follow such strict use of the word, and 'trap' as now used in this type of lawsuit generally means any kind of a hidden dangerous condition and there need not be any intent to injure."

See also: 65 C.J.S. Negligence § 63(39) pp. 711, 712.

Having reviewed the evidence under the appropriate standards [see In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951)], defendant's points challenging the findings of the jury with reference to plaintiff's status as an invitee are overruled. Such holding makes it unnecessary for us to give further consideration to plaintiff's contention that even if he were a mere licensee, nevertheless, the defendant breached the duty owed to plaintiff and the recovery should stand.

The judgment below, being correct, is in all things affirmed.