**CENTRAL QUALITY COAL CO., Inc.,**
**Appellant,**

v.

**Shirlie Gail AKERS, Administratrix, etc.,**
**Appellee.**

Court of Appeals of Kentucky.

June 19, 1970.

Edward R. Hays, William J. Baird, Baird & Hays, Pikeville, for appellant.

**350**

F. Dale Burke, Joseph W. Justice, Burke & Justice, Pikeville, for appellee.

OSBORNE, Judge.

This is an action by the appellee, Shirlie Gail Akers, as administratrix of the estate of her deceased husband, Ralph Akers, to recover for his wrongful death. The jury returned a verdict for $45,000 upon which judgment was entered. Appellant, Central Quality Coal Company, here asks that that judgment be reversed assigning two principal reasons:

First, there was no showing of negligence upon its part; and, second, assuming that there was negligence the evidence shows conclusively that Ralph Akers was himself also negligent, therefore barring recovery. We are of the opinion the judgment should be reversed.

The facts which form the basis of the action are as follows:

The decedent was employed as a truck driver by Gary Johnson, who was an independent contractor paid by Central Quality Coal Company, to transport coal from Mine #7 on Little Robin's Creek to its preparation plant. Decedent met his death at the loading facility which was owned and maintained by Central. This facility consisted of a bin and chain conveyor. The coal was transported by the chain conveyor from the bin into the waiting trucks. A switch which activated the conveyor was located on an H frame supporting the conveyor. When a driver desired to load his truck, he would get out of the cab, throw the switch, thereby starting the conveyor and the truck would automatically be loaded. The bin out of which the conveyor transported the coal was made by excavating the earth into a hopper-type affair below the mouth of the mine. The coal was transported in trucks to the mouth of the mine and dumped into the earthen bin. As the conveyor would take the coal from the bottom of the bin, the coal would sink down directly over the mouth of the tube

and feed into the conveyor by force of gravity. Occasionally, the coal would become jammed and the conveyor would hollow out a tunnel. The coal would stop feeding until the top was shaken. It would then start a slide into the conveyor. The drivers were all familiar with the operation and whenever it became stuck or did not properly feed onto the conveyor it was a practice of the drivers to go on the bin and shake or kick the coal in order to dislodge it.

Appellant met his death on March 13, 1968, around 9:45 p. m. when he and two other truck drivers met at the conveyor for the purpose of loading their trucks. Amos Bryant had his truck under the conveyor to be loaded. Akers and another truck driver, Kermit Roberts, were waiting to load their trucks. The coal jammed and did not come out of the conveyor. Akers and Roberts went up on the hopper to see why the coal was no longer feeding. According to Roberts' testimony, while they were on the pile, Akers disappeared. Roberts does not know whether he jumped or fell into the bin. When last seen he was going feet first into the coal bin where the coal fed into the tube. He went into the tube and was asphyxiated. Roberts and Bryant attempted to turn off the conveyer but before this could be accomplished Akers was beyond help. Several drivers testified that they and Akers had all gone on the pile many times before. They realized the danger yet proceeded to kick or punch the coal to get it unstopped so that they could load their trucks and get away. It was the opinion of the drivers that it was necessary to follow this procedure since most of them were paid by the load (it does not appear whether Akers was paid by the load or the day) and their salaries would be diminished by waiting for the company to send help.

The first legal problem contested by the parties is the status of Akers at the time of his injury. It is the contention of Mrs. Akers that he was an invitee at the time. It is the contention of the mining company that his status as an invitee terminated at

the switch box on the H frame and once he left that point and went up the slope he became a mere licensee at best and a trespasser at worst. The basis of the company's assertion is the fact that the drivers were instructed to throw the switches and load their trucks, that no authority to go up on the stack was given, and they were told to ask for help in case of malfunction of the equipment. On the other hand, it is the contention of Mrs. Akers that it was to the advantage of the coal company to have the coal moved as rapidly as possible, that it would have unduly delayed the haul of the coal had each driver waited until the company sent a man to clear the conveyor and that the company knew the drivers were shaking down the coal and working on the conveyor and acquiesced in this.

■ The law is clear that a visitor has the status of an invitee only while he is on the part of the land to which the invitation is extended. And, the mere fact that the possessor knows that invitees in general or a particular invitee will be likely to go into parts of the premises other than where he is invited is not enough in itself to place that area within the area of invitation unless the visitor is in some way led to believe that the invitation extends into the questioned area. See Restatement, Second, Torts § 332, Comment, pp. 181–182, 1965. It is clear from the evidence in this case that the company did not specifically request the drivers to climb the hill and shake down the coal. It is equally clear that the company had knowledge that this practice was being conducted and that it was for the mutual benefit of the drivers and the company that it be carried on. We are of the opinion that under these circumstances the company should not now be heard to deny that Akers was an invitee when he was performing his work for the mutual benefit of both parties at a place and in a manner if not encouraged at least acquiesced in by the coal company. We believe he was an invitee. See Olshan Demolishing Co. v. Burleson, Tex., 452 S.W.2d 742.

■ The next question proposed by the facts is, was Akers contributorily negligent as a matter of law when he went upon the coal pile voluntarily with full knowledge and appreciation of the dangers incident to his action? We believe he was. In Leslie Four Coal Company v. Simpson, Ky., 333 S.W.2d 498, we held the driver negligent under facts almost identical to those in this case. There we held, when the driver for the purpose of loading his truck backed it in close to a horizontal wall and was caught in a cave-in, his action constituted negligence as a matter of law and he could not recover on his claim against the coal company. Stating, "It is our view the evidence in this case revealed that the dangerous condition which arose here, and to which appellee exposed himself and was hurt, were as well known to appellee as to appellant, or should have been as obvious to him as to it." We believe the same is true in this case. The evidence is overwhelming that Akers, along with the other drivers, fully knew and appreciated the danger of going on the bin. The danger was obvious not only to the experienced coal handlers but to a rank layman. Akers was under a duty to use his own knowledge to avoid danger upon the premises while loading the coal. It was a danger which was inherent in this manner of loading trucks and was as well known to Akers as to the mining company. See Leslie Four Coal Co. v. Simpson, supra, for a case we consider to be on all fours with the one before us. We are amazed that it is not cited in the briefs by either party.

Wherefore, the judgment is reversed with directions to set aside the verdict and enter judgment for the defendant.

Judgment reversed.

All concur.