IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 6, 2004 Session

## THOM SHEPHERD v. MAXIMUS ENTERTAINMENT GROUP, INC.

Appeal from the Chancery Court for Davidson County
No. 02-2720-I    Irvin H. Kilcrease, Jr., Chancellor

No. M2003-01664-COA-R3-CV -Filed September 1, 2005

This appeal involves a dispute between a country music songwriter and a music publishing company arising out of an "exclusive co-publishing agreement" relating to the song "Riding with Private Malone" and other works.  Because of the parties' dispute, ASCAP declined to release royalties for "Riding with Private Malone" to either the songwriter or the publisher.  The songwriter filed suit in the Chancery Court for Davidson County seeking a determination that the publishing company had breached the agreement and that he was entitled to receive the royalties held by ASCAP because all the rights to "Riding with Private Malone" had reverted to him.  Both parties filed motions for summary judgment.  The trial court concluded that the songwriter was not entitled to the withheld royalties.  After the trial court denied his motion to amend his complaint to seek money damages, the songwriter appealed.  We have concluded that the trial court erred by holding that the songwriter was not entitled to the withheld royalties and that the trial court properly denied the songwriter's motion to amend his complaint.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Reversed in Part**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and FRANK G. CLEMENT, JR., JJ., joined.

Isham B. Bradley, Brentwood, Tennessee, for the appellant, Thom Shepherd.

Auborn L. Hager, III, Nashville, Tennessee, for the appellee, Maximus Entertainment Group, Inc.

**OPINION**

**I.**

Thom Shepherd wrote the country music song "Riding with Private Malone."  On December 1, 2001, after the song achieved a measure of commercial success, Mr. Shepherd entered into a music publishing contract with Maximus Entertainment Group, Inc. ("Maximus").  The "Exclusive Co-Publishing Agreement" drafted by Maximus covered three sets of compositions:  the song "Riding with Private Malone," several other songs Mr. Shepherd had previously written, and all songs Mr. Shepherd would write and compose during the three-year term of the agreement.  The agreement specified that all of the songs would be "co-published" by Mr. Shepherd and Maximus.

In the agreement, Mr. Shepherd assigned Maximus 12.5% of his copyright interest in the song "Riding with Private Malone" and 50% of his copyright interest in the other songs he had previously written, as well as the songs he would write or compose during the term of the agreement. Maximus's interest in the song "Riding with Private Malone" would last for five years, but Maximus's interest in the other songs covered by the agreement would continue for the full term of the copyrights to the songs, including any renewals, extensions, or revivals of the copyrights.

In return, Maximus agreed to make several types of payments to Mr. Shepherd. First, Maximus agreed that Mr. Shepherd would receive 87.5% of the total royalties from "Riding with Private Malone" and 75% of the total royalties from all of the other songs covered by the agreement. Second, Maximus agreed to pay Mr. Shepherd advances against royalty income in the amount of $40,000 during the first year of the agreement, $45,000 during the second year of the agreement, and $50,000 during the third year of the agreement. The yearly advances were to be paid in monthly installments due on the first day of each month. Third, Maximus agreed to pay Mr. Shepherd an initial non-recoupable bonus of $20,000.00 for "Riding with Private Malone" and an additional one-time advance of $2,666.66 for the other songs Mr. Shepherd had previously written.

The agreement also contained several provisions regarding the reversion of Maximus's interest in the songs to Mr. Shepherd. All of Maximus's rights in the song "Riding with Private Malone" would automatically revert to Mr. Shepherd at the end of five years. Maximus's rights in any of the songs Mr. Shepherd wrote during the term of the agreement would also automatically revert to Mr. Shepherd at the end of five years if the songs had not been commercially exploited during that time. Maximus's interest in the songs other than "Riding with Private Malone" written before December 1, 2001 that were covered by the agreement would revert to Mr. Shepherd at the end of the agreement only if Mr. Shepherd repaid Maximus the initial $2,666.66 advance he was to receive for those songs. Finally, Maximus's interest in all of the songs, including "Riding with Private Malone," would automatically and immediately revert to Mr. Shepherd if (1) one of the principals of Maximus left the company during the term of the agreement, (2) Maximus declared or was forced to declare bankruptcy, or (3) Maximus defaulted in making any of the payments required by the agreement. The agreement provided that Maximus would have five days to cure after receiving written notice of any default from Mr. Shepherd.

Maximus paid Mr. Shepherd the first monthly advance and the $20,000 non-recoupable bonus for "Riding with Private Malone" but failed to make any of the other payments required by the agreement. On May 15, 2002, Mr. Shepherd's attorney sent Maximus a letter stating that Maximus was in breach of the agreement for failure to pay the required monthly advances, that Maximus had five days to cure the default, and that if Maximus did not cure the default within that time, the agreement would automatically terminate, and Maximus's interest in all the songs covered by the agreement would automatically revert to Mr. Shepherd. Mr. Shepherd's attorney received no response to this letter. Accordingly, on June 3, 2002, Mr. Shepherd's attorney wrote Maximus a second letter stating that due to Maximus's default under the agreement as outlined in his first letter and Maximus's failure to cure its default, the agreement had been terminated, and all of the rights Mr. Shepherd had previously granted to Maximus had reverted to Mr. Shepherd.

Maximus refused to recognize the reversion of its interest in "Riding with Private Malone."[1] As a result, the American Society of Composers, Authors and Publishers ("ASCAP"), which collects and distributes royalties from the public performance of songs, refused to release over $25,000 in royalties representing Maximus's 12.5% interest in "Riding with Private Malone" without a judicial determination of who was entitled to the funds. Accordingly, on September 12, 2002, Mr. Shepherd filed suit against Maximus in the Davidson County Chancery Court seeking a declaration that Maximus's rights in all of the songs governed by the agreement had reverted to him. On October 17, 2002, David A. LaChance, the chief executive officer of Maximus, filed a document titled "Response to Complaint," purportedly on behalf of Maximus.[2] On December 2, 2002, Maximus, this time represented by counsel, filed its "Amended Answer."

In its "Amended Answer," Maximus admitted that it had not paid Mr. Shepherd all of the monthly advances required by the parties' agreement. In light of this admission, Mr. Shepherd filed a motion for partial summary judgment. Mr. Shepherd argued that Maximus had admitted its default and that the undisputed facts showed that Maximus had received written notice of the default and had failed to cure the default within the requisite time. Therefore, Mr. Shepherd claimed he was entitled, as a matter of law, to a judgment that Maximus had breached the agreement, that the agreement had been terminated, and that all rights in the compositions covered by the agreement, including rights to royalties, had reverted to him.

Maximus responded by filing its own motion for summary judgment. Maximus again admitted that it failed to pay Mr. Shepherd all of the monthly advances required by the agreement, acknowledged that it received the written notice of default and notice of termination from Mr. Shepherd's attorney, and stated that all of its rights in all compositions other than "Riding with Private Malone" had reverted to Mr. Shepherd. However, Maximus argued that because it had paid Mr. Shepherd an initial $20,000 non-recoupable bonus for "Riding with Private Malone," its 12.5% interest in that song would still continue for five years in spite of the fact that it breached the agreement by failing to make the monthly advance payments, and in spite of the fact that the agreement had thereby been terminated.

In a memorandum opinion filed March 20, 2003, the trial court concluded that Maximus's rights relating to the song "Riding with Private Malone" were separate from its rights with respect to the other songs covered by the agreement and that its default on its obligations with respect to the other songs did not affect its rights with respect to "Riding with Private Malone." Accordingly, the court denied Mr. Shepherd's motion for partial summary judgment and granted Maximus's motion for summary judgment. The trial court entered an order reflecting its conclusions on March 31, 2003. Mr. Shepherd then filed a motion for an interlocutory appeal and a motion for permission to amend his complaint to add a claim for money damages against Maximus. Given that the March 31, 2003 order was a final order, the trial court denied Mr. Shepherd's motion for an interlocutory

---

[1]At some point, Maximus had obtained a $30,000 loan from U.S. Bank secured by its 12.5% interest in the song "Riding with Private Malone."

[2]A corporation cannot represent itself in a court proceeding, nor can a corporation be represented by a non-attorney agent such as Mr. LaChance. *Old Hickory Eng'g & Mach. Co. v. Henry*, 937 S.W.2d 782, 786 (Tenn. 1996).

appeal. The trial court also denied Mr. Shepherd's motion to amend the complaint. Mr. Shepherd filed a timely notice of appeal.

## II.
### THE AGREEMENT'S REVERSION PROVISIONS

Mr. Shepherd argues that the trial court erred by denying his motion for partial summary judgment and granting Maximus's motion for summary judgment because the trial court misinterpreted the reversion provisions of the agreement. This issue is particularly amenable to disposition by summary judgment because questions involving the meaning of a written contract are questions of law rather than questions of fact. We have determined that the trial court misinterpreted the reversion provisions in the parties' "Exclusive Co-Publishing Agreement."

### A.

The standards for reviewing summary judgments on appeal are well settled. Summary judgments are proper in virtually any civil case that can be resolved on the basis of legal issues alone. *Fruge v. Doe*, 952 S.W.2d 408, 410 (Tenn. 1997); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Pendleton v. Mills*, 73 S.W.3d 115, 121 (Tenn. Ct. App. 2001). They are not, however, appropriate when genuine disputes regarding material facts exist. Tenn. R. Civ. P. 56.04. Thus, a summary judgment should be granted only when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion – that the party seeking the summary judgment is entitled to a judgment as a matter of law. *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620 (Tenn. 2002); *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001).

The party seeking a summary judgment bears the burden of demonstrating that no genuine dispute of material fact exists and that it is entitled to a judgment as a matter of law. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002); *Shadrick v. Coker*, 963 S.W.2d 726, 731 (Tenn. 1998). To be entitled to a judgment as a matter of law, the moving party must either affirmatively negate an essential element of the non-moving party's claim or establish an affirmative defense that conclusively defeats the non-moving party's claim. *Byrd v. Hall*, 847 S.W.2d at 215 n.5; *Cherry v. Williams*, 36 S.W.3d 78, 82-83 (Tenn. Ct. App. 2000).

Once the moving party demonstrates that it has satisfied Tenn. R. Civ. P. 56's requirements, the non-moving party must demonstrate how these requirements have not been satisfied. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). Mere conclusory generalizations will not suffice. *Cawood v. Davis*, 680 S.W.2d 795, 796-97 (Tenn. Ct. App. 1984). The non-moving party must convince the trial court that there are sufficient factual disputes to warrant a trial (1) by pointing to evidence either overlooked or ignored by the moving party that creates a factual dispute, (2) by rehabilitating evidence challenged by the moving party, (3) by producing additional evidence that creates a material factual dispute, or (4) by submitting an affidavit in accordance with Tenn. R. Civ. P. 56.07 requesting additional time for discovery. *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Byrd v. Hall*, 847 S.W.2d at 215 n.6. A non-moving party that fails to carry its burden faces summary dismissal of the challenged claim because, as our courts have repeatedly observed, the "failure of proof concerning an essential element of the cause of action necessarily

renders all other facts immaterial." *Alexander v. Memphis Individual Practice Ass'n*, 870 S.W.2d 278, 280 (Tenn. 1993).

A summary judgment is not appropriate when a case's determinative facts are in dispute. However, for a question of fact to exist, reasonable minds must be able to differ over whether some alleged occurrence or event did or did not happen. *Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 647 (Tenn. 1995); *Harrison v. S. Ry. Co.*, 31 Tenn. App. 377, 387, 215 S.W.2d 31, 35 (1948). If reasonable minds could justifiably reach different conclusions based on the evidence at hand, then a genuine question of fact exists. *Louis Dreyfus Corp. v. Austin Co.*, 868 S.W.2d 649, 656 (Tenn. Ct. App. 1993). If, on the other hand, the evidence and the inferences reasonably drawn from the evidence would permit a reasonable person to reach only one conclusion, then there are no material factual disputes, and the question can be disposed of as a matter of law. *Godfrey v. Ruiz*, 90 S.W.3d at 695; *Seavers v. Methodist Med. Ctr. of Oak Ridge*, 9 S.W.3d 86, 91 (Tenn. 1999); *Beaudreau v. Gen. Motors Acceptance Corp.*, 118 S.W.3d 700, 703 (Tenn. Ct. App. 2003).

Summary judgments enjoy no presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003); *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 285 (Tenn. 2001). Accordingly, appellate courts must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997). We must consider the evidence in the light most favorable to the non-moving party, and we must resolve all inferences in the non-moving party's favor. *Godfrey v. Ruiz*, 90 S.W.3d at 695; *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001). When reviewing the evidence, we must determine first whether factual disputes exist. If a factual dispute exists, we must then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd v. Hall*, 847 S.W.2d at 214; *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998).

**B.**

The operative facts in this case are essentially undisputed. Maximus admits that it failed to make the payments required by the agreement, that it failed to cure its breach within the required time after receiving written notice from Mr. Shepherd's attorney, and that the agreement was therefore terminated. Maximus's only defense to Mr. Shepherd's claim is that the song "Riding with Private Malone" was an exception to the reversion provisions. Thus, this case can be determined solely by reference to the terms of the parties' written agreement. Where, as here, the terms of an agreement are "plain and unambiguous" on a particular point, the interpretation of the agreement is a question of law. *Bratton v. Bratton*, 136 S.W.3d 595, 601 (Tenn. 2004); *Standard Fire Ins. Co. v. Chester-O'Donley & Assocs.*, 972 S.W.2d 1, 5-6 (Tenn. Ct. App. 1998). Because the parties' rights can be determined by the resolution of legal questions alone, the trial court correctly concluded that this case was an appropriate one for resolution by summary judgment. The primary question on appeal, then, is whether the trial court erred in its interpretation of the reversion provisions of the parties' agreement. This is a question of law that we review de novo. *Security Fire Prot. Co. v. Huddleston*, 138 S.W.3d 829, 834 (Tenn. Ct. App. 2003); *Gen. Const. Contractors Ass'n v. Greater St. Thomas Baptist Church*, 107 S.W.3d 513, 520 (Tenn. Ct. App. 2002).

The reversion provisions at issue are contained in paragraphs three and nine of the agreement. Paragraph three, titled "Compensation," contains a miscellaneous provision that reads as follows:

> In the event that Publisher fails to timely pay Songwriter the Monthly Advance pursuant to paragraph 3(b) hereof on the first business day of each month of the Term hereof, in such case of failure to pay the Monthly Advance, this Agreement shall automatically terminate and all rights in the Compositions shall automatically revert to Songwriter and Songwriter shall have no further obligation to Publisher under this Agreement. Publisher shall have five (5) days to cure Publisher's failure to timely pay the Monthly Advance due hereunder.

Paragraph nine, under the heading "Copyright/Reversion," provides:

> With the exception of ["]Riding With Private Malone" the rights herein granted hereunder shall be for the full term of copyright of the Compositions, including any renewals, extensions and revivals of copyright in any and all languages throughout the universe. In the event of Publisher's default in payment per the provisions otherwise set forth herein, all copyrights in the Compositions delivered hereunder during the Term shall automatically and immediately revert to Songwriter, effective immediately thereupon. Publisher shall acknowledge such reversion, in writing, within five (5) business days of Songwriter's written notice to Publisher of such breach and resulting reversion of copyrights.

The meaning of the reversion provisions quoted above is plain and unambiguous, particularly in light of the definitions contained in the agreement. The agreement states that references to the "Publisher" mean Maximus, and that references to the "Songwriter" mean Mr. Shepherd. The agreement defines the term "Compositions" to mean "all original musical compositions" and states that the songs set forth on Exhibit A to the agreement – *i.e.*, "Riding with Private Malone" – are "further defined as Compositions delivered hereunder." Using these definitions, the first sentence of the portion of paragraph three quoted above can be restated as follows:

> In the event that [Maximus] fails to timely pay [Mr. Shepherd] the Monthly Advance . . . , this Agreement shall automatically terminate and all rights in [all original musical compositions] shall automatically revert to [Mr. Shepherd].

The second sentence of paragraph nine can similarly be restated as follows:

> In the event of [Maximus's] default in payment per the provisions otherwise set forth herein, all copyrights in [all original musical compositions] delivered hereunder during the Term shall automatically and immediately revert to Songwriter.

-6-

The plain and unambiguous meaning of these provisions is that Maximus's interests in all of the songs governed by the agreement – including "Riding with Private Malone" – would automatically and immediately revert to Mr. Shepherd if Maximus failed to make any of the payments required under the agreement.

In spite of the plain language of the agreement quoted above, Maximus contends that the song "Riding with Private Malone" was intended to be an "exception" to these reversion provisions. Maximus offers two main arguments in support of this contention. First, Maximus argues that because the agreement contains *other* provisions that explicitly distinguish between "Riding with Private Malone" and the other songs covered by the agreement, we should interpret these reversion provisions as making the same distinction. However, the "interpretation" suggested by Maximus is not really an interpretation at all. Instead, Maximus, dissatisfied with the consequences resulting from the plain terms of an agreement that it drafted, is asking this court to rewrite these reversion provisions to insert an exception for the song "Riding with Private Malone." This we cannot do. The courts must interpret contracts as they are written. *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975); *Bradson Mercantile, Inc. v. Crabtree*, 1 S.W.3d 648, 652 (Tenn. Ct. App. 1999). Courts do not concern themselves with the wisdom or folly of a contract, *Chapman Drug Co. v. Chapman*, 207 Tenn. 502, 516, 341 S.W.2d 392, 398 (1960); *Brooks v. Networks of Chattanooga, Inc.*, 946 S.W.2d 321, 324 (Tenn. Ct. App. 1996), and we will not relieve parties from contractual obligations simply because these obligations later prove to be burdensome or unwise. *Atkins v. Kirkpatrick*, 823 S.W.2d 547, 553 (Tenn. Ct. App. 1991); *Ballard v. N. Am. Life & Cas. Co.*, 667 S.W.2d 79, 82 (Tenn. Ct. App. 1983); *Carrington v. W. A. Soefker & Son, Inc.*, 624 S.W.2d 894, 897 (Tenn. Ct. App. 1981).

Second, Maximus argues that its admitted breach of the contract does not require it to surrender its five-year, 12.5% interest in the song "Riding with Private Malone" because the initial $20,000 non-recoupable bonus payment it made to Mr. Shepherd was intended to be the sole consideration for this interest. However, there is nothing in the agreement to suggest that the parties viewed the additional $20,000 bonus for "Riding with Private Malone" to be the sole consideration for Maximus's five-year, 12.5% interest in the song. Moreover, this argument runs directly counter to the express language of the reversion provisions in the agreement. Paragraph three states that in the event Maximus fails to pay the required monthly advances, "this Agreement shall automatically terminate and all rights in the Compositions shall automatically revert" to Mr. Shepherd. Paragraph nine goes even further, stating that if Maximus defaults on making *any* of the payments required in the agreement, "all copyrights in the Compositions delivered hereunder during the Term shall automatically and immediately revert" to Mr. Shepherd. Thus, while the initial $20,000 bonus payment Mr. Shepherd received for "Riding with Private Malone" was separate from the other consideration contemplated by the agreement, it was not severable from that other consideration.

### III.
### MR. SHEPHERD'S MOTION TO AMEND HIS COMPLAINT

Mr. Shepherd also insists that the trial court erred by denying his motion to amend his complaint to add a claim for money damages against Maximus. He argues that he should have been permitted to amend his complaint even after the trial court had granted Maximus's summary

judgment motion because of Tenn. R. Civ. P. 15.01's liberality. We have determined that the trial court did not err when it denied Mr. Shepherd's motion to amend.

## A.

The decision to grant or deny a motion to amend the pleadings lies within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Henderson v. Bush Bros. & Co.*, 868 S.W.2d 236, 237 (Tenn. 1993); *McCullough v. Johnson City Emergency Physicians, P.C.*, 106 S.W.3d 36, 44 (Tenn. Ct. App. 2002); *Hawkins v. Hart*, 86 S.W.3d 522, 532 (Tenn. Ct. App. 2001). Tenn. R. Civ. P. 15.01 allows a plaintiff to amend his or her complaint once as a matter of course so long as it is done before the opposing party has filed a responsive pleading. Thereafter, a plaintiff may only amend the complaint with the consent of the opposing party or by leave of the trial court. Tenn. R. Civ. P. 15.01.

Leave to file an amended complaint must be "freely given when justice so requires." Tenn. R. Civ. P. 15.01. In deciding whether "justice . . . requires" that an amendment to the complaint be allowed after a responsive pleading has been filed, the trial court must consider the following factors: the plaintiff's undue delay in filing the motion; lack of notice to the opposing party; bad faith by the moving party; repeated failure to cure deficiencies by previous amendments; undue prejudice to the opposing party; and futility of the amendment. *Hawkins v. Hart*, 86 S.W.3d at 532-33; *Isbell v. Travis Elec. Co.*, No. M1999-00052-COA-R3-CV, 2000 WL 1817252, at *15 (Tenn. Ct. App. Dec. 13, 2000) (No Tenn. R. App. P. 11 application filed).

## B.

Mr. Shepherd did not seek to amend his complaint until after the trial court had entered its order denying his motion for partial summary judgment and granting Maximus's motion for summary judgment. He provided no excuse in the trial court and provides none here for his failure to move to amend his complaint prior to the entry of summary judgment in favor of the opposing party except to say in his brief on appeal that "[i]t was not apparent that any such cause of action was necessary until the Court issued it's [sic] first ruling." In other words, Mr. Shepherd, having lost the case at the summary judgment stage on one theory of recovery, sought to keep the case alive by amending his original complaint to add a new theory of recovery.

It is not an abuse of discretion to deny a motion to amend the complaint filed after the entry of summary judgment in favor of the opposing party where the sole justification for the amendment is that the moving party was defeated at the summary judgment stage. *Briddle v. Scott*, 63 F.3d 364, 379-81 (5th Cir. 1995); *Freeman v. Cont'l Gin Co.*, 381 F.2d 459, 469-70 (5th Cir. 1967) ("Much of the value of summary judgment procedure in the cases for which it is appropriate . . . would be dissipated if a party were free to rely on one theory in an attempt to deflect a motion for summary judgment and then, should that theory prove unsound, come back long thereafter and fight on the basis of some other theory."); *see also Isbell v. Travis Elec. Co.*, 2000 WL 1817252, at *14-16 (approving the reasoning of *Briddle v. Scott* and *Freeman v. Cont'l Gin Co.*). Accordingly, the trial court did not err in denying Mr. Shepherd's motion to amend his complaint.

## IV.
### U. S. BANK AS A NECESSARY PARTY

Maximus also raises an issue on appeal regarding the necessity of joining U.S. Bank as a party if the case must be remanded. It asserts that even if this court agrees with Mr. Shepherd's interpretation of the agreement, U. S. Bank should be added as a defendant when the case is remanded because it used its interest in "Riding with Private Malone" as security for a $30,000 loan from U. S. Bank. We have concluded that U. S. Bank is not a necessary or indispensable party under Tenn. R. Civ. P. 19.01.

A necessary or indispensable party under Tenn. R. Civ. P. 19.01 is someone who will be directly affected by the court's decree and whose interests are not represented by any other party to the litigation. *Horton v. Tenn. Dep't of Corr.*, No. M1999-02798-COA-R3-CV, 2002 WL 31126656, at *4 n.4 (Tenn. Ct. App. Sept. 26, 2002) (No Tenn. R. App. P. 11 application filed); *Gilley v. Jernigan*, 597 S.W.2d 313, 318 (Tenn. Ct. App. 1979). In this case, Maximus and U.S. Bank appear to have an identity of interests because both would presumably be better off if Maximus were allowed to retain its rights in "Riding with Private Malone." Accordingly, though we are remanding the case for further proceedings consistent with this opinion, we see no basis for instructing the trial court that it must add U.S. Bank as a defendant on remand.

## V.

The trial court erred in interpreting the reversion provisions of the agreement. Under these provisions, Maximus's default in making any of the payments required by the agreement triggered automatic termination of the agreement and reversion to Mr. Shepherd of Maximus's interest in all of the songs covered by the agreement, including "Riding with Private Malone." Accordingly, the trial court erred in denying Mr. Shepherd's motion for partial summary judgment and in granting Maximus's motion for summary judgment. The trial court did not, however, abuse its discretion in denying Mr. Shepherd's post-summary judgment motion to amend the complaint. For these reasons, we reverse the summary judgment for Maximus and remand the case with directions to enter a summary judgment for Mr. Shepherd regarding the disputed rights to "Riding with Private Malone" and for any further proceedings that may be required. We tax the costs of this appeal to Maximus Entertainment Group, Inc. for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., P.J., M.S.